**SOUTHEASTERN CHESTER COUNTY REFUSE AUTHORITY, Appellant**

v.

**BOARD OF SUPERVISORS OF LONDON GROVE TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2008.

Decided July 30, 2008.

Roger E. Legg, Parkesburg, for appellant.

Michael G. Crotty, Chester Springs, for appellee.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Southeastern Chester County Refuse Authority (SECCRA) appeals the order of the Court of Common Pleas of Chester County (trial court), which affirmed the order of the Board of Supervisors (Board) of London Grove Township (Township), denying SECCRA's application for approval of the expansion of its sanitary landfill as a conditional use. SECCRA argues that, due to the Board's failure to adhere to the time limits set out in Section

908(1.2) of the Pennsylvania Municipalities Planning Code (MPC),[1] SECCRA's application must be deemed to have been approved by the Board. This case comes to this Court on remand from a decision of the Supreme Court of Pennsylvania vacating our order set out in *Southeastern Chester County Refuse Authority v. Board of Supervisors of London Grove Township*, 916 A.2d 1237 (Pa.Cmwlth.2007) (*SECCRA I*), and remanding the matter for further consideration in light of that Court's decision in *Wistuk v. Lower Mount Bethel Township Zoning Hearing Board*, 592 Pa. 419, 925 A.2d 768 (2007).

SECCRA is a joint municipal refuse authority comprising ten Chester County municipalities, including the Township. SECCRA owns and operates an existing 80–acre landfill within the Township. On August 13, 2003, SECCRA submitted an application to the Board for a conditional use permit allowing SECCRA to expand its existing landfill by 37 acres. The Board held its first hearing on SECCRA's application on October 22, 2003, which was 70 days after SECCRA submitted its application and 10 days beyond the time period permitted by Section 908(1.2). At the October 22 hearing, SECCRA asked for a

continuance because it was attempting to reach a compromise with the Board. SECCRA presented its case in support of its application at hearings held on November 20, 2003, December 18, 2003, January 21, 2004, February 18, 2004, March 22, 2004, April 26, 2004, and May 3, 2004. The Township presented its case at hearings held on May 24, 2004, June 23, 2004, July 21, 2004, August 26, 2004, October 13, 2004, October 20, 2004, November 22, 2004, December 13, 2004, and December 20, 2004. SECCRA presented rebuttal evidence at hearings held on December 20, 2004, March 23, 2005, and April 13, 2005. Forty-eight days elapsed between the August 26, 2004 hearing and the October 13, 2004 hearing. Ninety-three days elapsed between the December 20, 2004 hearing and the March 23, 2005 hearing. On August 11, 2005, the Board issued its decision denying SECCRA's application.

■ SECCRA appealed the Board's decision to the trial court. Among the issues that SECCRA raised before the trial court was that, by scheduling hearings in violation of the time periods mandated by Section 908(1.2), SECCRA's application was statutorily deemed approved.[2] The trial

---

**1.** Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(1.2). Section 908(1.2) states in relevant part:

> The first hearing before the board … shall be commenced within 60 days from the date of receipt of the applicant's application, unless the applicant has agreed in writing to an extension of time. Each subsequent hearing before the board … shall be held within 45 days of the prior hearing, unless otherwise agreed to by the applicant in writing or on the record. An applicant shall complete the presentation of his case-in-chief within 100 days of the first hearing. Upon the request of the applicant, the board or hearing officer shall assure that the applicant receives at least seven hours of hearings within the 100 days, including the first hearing. Persons opposed to the

> application shall complete the presentation of their opposition to the application within 100 days of the first hearing held after the completion of the applicant's case-in-chief. An applicant may, upon request, be granted additional hearings to complete his case-in-chief provided the persons opposed to the application are granted an equal number of additional hearings. Persons opposed to the application may, upon the written consent or consent on the record by the applicant and municipality, be granted additional hearings to complete their opposition to the application provided the applicant is granted an equal number of additional hearings for rebuttal.

> 53 P.S. § 10908(1.2).

**2.** The other issues SECCRA presented to the trial court for review were as follows:

court, citing cases including *Wistuk v. Lower Mount Bethel Township Zoning Hearing Board*, 887 A.2d 343 (Pa.Cmwlth. 2005), held that because SECCRA "was present during scheduling discussions, failed to object and continued to participate in the proceedings," SECCRA had consented to the untimeliness of the hearings, and the "Board was entitled to believe" SECCRA had done so. (Trial Ct. Op. at 7–8.) SECCRA then appealed to this Court. A panel of this Court, feeling constrained by our decisions in *Wistuk* and *Hogan, Lepore & Hogan v. Pequea Township Zoning Hearing Board*, 162 Pa. Cmwlth. 282, 638 A.2d 464 (1994), affirmed the trial court. SECCRA appealed to the Supreme Court, which vacated this Court's order and remanded the matter for further consideration consistent with the Supreme Court's decision in *Wistuk*.[3]

In *Wistuk*, a Lower Mount Bethel Township (Lower Mt. Bethel) zoning officer cited a property owner, Jessica Wistuk (Wistuk), for operating a dog kennel without a permit. Wistuk appealed and sought a special exception and a dimensional variance from the Lower Mt. Bethel Zoning Hearing Board (ZHB), which held five hearings, the last of which was on September 30, 2003. At that hearing, the attorney for the ZHB announced that the record was closed, but that the parties' attorneys could submit briefs and that the ZHB would hold a meeting on October 22,

2003, at which it would consider the case and deliver its decision. The ZHB's attorney stressed that neither party would be allowed to participate at this meeting, but that the meeting would be solely for the ZHB's deliberation and decision of the matter. Although the ZHB's attorney characterized this meeting as a hearing, Wistuk's attorney did not object to the characterization or the procedure and submitted a timely brief. The ZHB met on October 22 and denied Wistuk's requests for a variance and a special exception. The ZHB's attorney "made it clear that a written decision would be issued within forty-five days of that date, and the [ZHB] issued its written decision on November 28, 2003." *Wistuk*, 592 Pa. at 423, 925 A.2d at 770. Wistuk filed an action in mandamus, arguing that, under Section 908(9), because the ZHB took more than forty-five days to issue its written decision after the final hearing, which Wistuk argued took place on September 30, the ZHB was deemed to have approved her requests. The trial court denied Wistuk's complaint, and this Court affirmed the trial court's order. On appeal, the Supreme Court reversed this Court.

The Supreme Court held that, pursuant to the plain meaning of Section 908(9), a party could only waive the forty-five day requirement by an affirmative statement in writing or on the record. The Supreme

2. Did SECCRA prove all express requirements in § 1102 of the *Ordinance* for conditional use approval except for the height and setback dimensions since no other provisions in the Ordinance contain express standards and criteria within the meaning of § 603(c)(2) of the MPC?

3. Can conditional use approval be withheld simply because SECCRA has not yet established its absolute right to its proposed height and setback dimensions?

4. Was the Board's decision reached in bad faith and therefore its factual findings

cannot be accorded the deference usually afforded such findings?

5. Was SECCRA denied due process and a fair hearing by the representation of the board by counsel in opposition to its application?

(Trial Ct. Op. at 2–3.)

3. Where the trial court has not taken additional evidence, our review is limited to determining whether the Board has committed an error of law or abused its discretion. *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 n. 1 (Pa.Cmwlth.2005).

Court's discussion of this issue is particularly helpful and, thus, we cite it at length:

Recently, a Commonwealth Court panel characterized the *Wistuk* majority position as an extension of its prior precedent establishing a general rule that a failure to object to scheduling of proceedings before zoning hearing boards will result in a waiver of any rights to a deemed approval. See [*SECCRA I*, 916 A.2d at 1241]. We agree, however, with Judge Friedman and President Judge Emeritus Colins that such a general rule is not appropriate, as the plain language of Section 908(9) [of the MPC, 53 P.S. § 10908(9),] controls over this judicial pronouncement. See 1 Pa.C.S. § 1921(a), (b). As previously noted, Section 908(9) allows for an exception to the forty-five day requirement where "the applicant has agreed in writing or on the record to an extension of time." 53 P.S. § 10908(9) *accord* [*South Lebanon Township Zoning Hearing Board v. Weber*, 140 Pa.Cmwlth. 177, 592 A.2d 127, 130 (1991)] (adopting a common pleas court's conclusion that "[t]he code is specific about the need for a written or recorded agreement by the applicant for an extension of time for the board's decision after the 'last' hearing in the matter").

We do not discount that, in some circumstances, such an agreement reasonably may be discerned from written or on-the-record discussions that are not explicitly framed in terms of a formal agreement.... Here, nothing in writing or of record fairly reflects any kind of *affirmative agreement* on Appellant's part to an extension of the forty-five day period [set forth in Section 908(9)]....

....

In summary, we hold that there is no general rule providing that any failure to object to the scheduling of proceedings before zoning hearing boards will result in a waiver of entitlement to a deemed approval....

*Wistuk*, 592 Pa. at 428–30, 925 A.2d at 773–74 (footnote omitted) (emphasis added). At issue in this case is Section 908(1.2), which sets forth the timeframes within which a zoning hearing board must hold hearings. We note that the language in Section 908(9), which the Supreme Court cited as the basis for its holding that an agreement to an extension of the forty-five day period within which to issue a written decision must be made "in writing or on the record," 53 P.S. § 908(9), is also applied in Section 908(9) to extensions of time periods set forth in Section 908(1.2):

[W]here the board fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time.

53 P.S. § 10908(9).

In this case, SECCRA argues on remand that it did not consent to the Township's violations of Section 908(1.2), which consisted of: (1) the Township's failure to hold the initial hearing on SECCRA's application within 60 days of the application; (2) the 48–day delay between the August 26, 2004 hearing and the October 13, 2004 hearing and the 93–day delay between the December 20, 2004 hearing and the March 23, 2005 hearing; and (3) the Township's using more hearings to present its case after its first 100 days than SECCRA used outside its first 100 days, any one of which resulted in a deemed approval of SECCRA's application.

SECCRA first argues that the Board failed to hold its first hearing on SECCRA's application within 60 days of

the application and that the application must, therefore, be deemed approved pursuant to Section 908(1.2). The Township argues that by continuing to actively participate in the hearing process, SECCRA affirmatively consented to the late hearing and waived its right to a deemed approval. The Township argues that this is the sort of on-the-record, affirmative consent that is required to waive SECCRA's right to a deemed approval under Section 908(1.2). We agree. In *Wistuk,* the Supreme Court stated that "there is no general rule providing that any failure to object to the scheduling of proceedings before zoning hearing boards will result in a waiver of entitlement to a deemed approval." *Id.* at 430, 925 A.2d at 774. The Supreme Court did not hold, nor does the plain text of Section 908 require, that such an agreement must be explicit. Indeed, the Supreme Court acknowledged that "[w]e do not discount that, in some circumstances, such an agreement reasonably may be discerned from written or on-the-record discussions that are not explicitly framed in terms of a formal agreement." *Id.* at 428–29; 925 A.2d at 773. With respect to an agreement which may be reasonably discerned from on-the-record discussions, Black's Law Dictionary defines "agreement" as:

1. A mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a *manifestation* of mutual assent by two or more persons. 2. The parties' actual bargain as found in their language *or by implication from other circumstances,* including course of dealing, usage of trade and course of performance.

*Black's Law Dictionary* 74 (8th Ed. 2004) (emphasis added) (citations omitted). This definition makes it clear that an agreement may be evidenced by manifestations or circumstances created by the parties other than verbal statements. Waiver of a known contractual right, for example, "may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *RCN Telecom Svcs. of Phila. v. Newtown Township,* 848 A.2d 1108, 1113 (Pa.Cmwlth.2004) (quoting *Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assocs. Ltd. P'ship,* 416 Pa.Super. 45, 610 A.2d 499, 501 (1992)).

By its on-the-record conduct, SECCRA took actions plainly inconsistent with any intention to stand on its right to a deemed approval, thereby agreeing to waive that right. At the initial hearing, SECCRA asked for a continuance and then proceeded to participate in *eighteen hearings,* on the record, spanning more than *sixteen months.* In these on-the-record hearings, SECCRA did not merely sit passively to hear a decision announced, as did the applicant in *Wistuk.* Rather, SECCRA presented evidence, made arguments in support of its position, and challenged the evidence and arguments of the Township.[4]

---

4. On November 20, 2003, SECCRA presented testimony from its general manager, William G. Stullken. On December 18, 2003, SECCRA presented further testimony from Mr. Stullken. On January 21, 2004, SECCRA presented redirect testimony from Mr. Stullken and introduced three exhibits. On February 18, 2004, SECCRA presented further redirect testimony from Mr. Stullken, presented the testimony of its consulting engineer, Gregory Wilhelm, and introduced one exhibit. On March 22, 2004, SECCRA presented further testimony from Mr. Wilhelm. On April 26, 2004, SECCRA presented the testimony of another engineer, John H. Comiskey. On May 3, 2004, SECCRA presented redirect testimony from Mr. Comiskey and introduced two exhibits. On May 24, 2004, SECCRA

In all, the hearings in which SECCRA actively participated involved nine witnesses and produced over 1600 pages of transcripts.

Such active participation, which goes well beyond mere attendance, is inconsistent with an intention to stand on the right to a deemed approval and constitutes an implicit, on-the-record agreement to continue with the hearing process, despite the lateness of the initial hearing. While not framed as a discussion regarding a formal waiver of its right to a deemed approval, SECCRA's participation in further hearings before the Board exhibits SECCRA's implicit agreement that these hearings are not irrelevant or moot. We note that, at a number of the hearings, SECCRA raised concerns regarding which supervisors would be deciding its application and whether newly-elected supervisors deciding the application would read the transcripts of hearings conducted before they assumed their positions. (Bd. Hr'g Tr. at 9–10, November 20, 2003; Bd. Hr'g Tr. at 70–71, December 18, 2003.) Additionally, when a Board supervisor missed a hearing, SECCRA requested that the supervisor read the transcript of the missed hearing before the next hearing. (Bd. Hr'g Tr. at 552, April 26, 2004). This concern that the correct supervisors attend the hearing and participate in the decision demonstrates an implicit assumption and agreement that there was a decision left to be

made regarding SECCRA's application and that the application had not already been deemed approved. To hold that these hearings *were* moot would be to allow an applicant to sit on its rights throughout a lengthy hearing process, straining the resources of the zoning hearing board. This Court, therefore, holds that, in this case, SECCRA's participation on the record in subsequent hearings, which included presenting testimony and evidence, cross-examining witnesses, and challenging evidence presented by the Township, manifested its agreement to an extension of time within which the Board held the initial hearing. As the Township and the trial court have both pointed out, such a holding is consistent with this Court's decision in *In re Appeal of Grace Building Co.*, 39 Pa.Cmwlth. 552, 395 A.2d 1049, 1051 n. 2 (1979), in which we held that continued participation in a land use hearing process, after the right to a deemed approval arises, waives that right.

■ Second, SECCRA argues that delays of greater than 45 days between some of the hearings resulted in a deemed approval of its application. Section 908(1.2) states in part that "[e]ach subsequent hearing before the board ... shall be held within 45 days of the prior hearing, unless otherwise agreed to by the applicant in writing or on the record." 53 P.S.

cross-examined Township's engineer, Anthony J. Severino. On June 23, 2004, SECCRA continued to cross-examine Mr. Severino and cross-examined the Township's expert traffic engineer, Robert G. Richardson. On July 21, 2004, SECCRA cross-examined Mr. Richardson and conducted voir dire examination of Township's expert hydrogeologist, Matthew Brill. On August 26, 2004, SECCRA cross-examined Mr. Brill. On October 13, 2004, SECCRA conducted voir dire examination of the Township's landfill engineering expert, C. Thomas DeLorimier, and cross-examined Mr. DeLorimier. On October 20, 2004, SECCRA

cross-examined Mr. DeLorimier. On November 22, 2004, SECCRA conducted voir-dire examination of the Township's expert land planning consultant, Walter C. Evans, and conducted cross-examination of Mr. Evans. On December 20, 2004, SECCRA conducted recross-examination of Mr. Evans and presented testimony from its expert geologist, David Farrington. On March 23, 2004, SECCRA made objections during the Township's cross-examination of Mr. Farrington. On April 13, 2004, SECCRA once again made objections during the Township's cross-examination of Mr. Farrington.

§ 10908(1.2). Forty-eight days elapsed between the August 26, 2004 hearing and the October 13, 2004 hearing. Ninety-three days elapsed between the December 20, 2004 and the March 23, 2005 hearing. SECCRA argues that it did not agree to these delays in writing or on the record and that, per Section 908(1.2) and *Wistuk*, its application was deemed approved. The Township again argues that, by continuing to fully participate on the record in the hearing process, SECCRA consented to the delays. Again, this Court agrees with the Township. At the August 26, 2004 hearing, SECCRA did initially object to the delay in scheduling the next hearing.[5] However, at the October 13, 2004 hearing, which occurred 48 days after the August 26 hearing, SECCRA did not ask the Board to recognize a deemed approval on the basis of the 48-day delay or initiate an action in mandamus to seek recognition of such approval. Instead, SECCRA continued to fully participate on the record in the hearing process before the Board, cross-examining the Township's witnesses and, eventually, presenting rebuttal evidence. As discussed above, such affirmative, on-the-record conduct constitutes assent to the previous delay. Likewise, after the 93-day delay, SECCRA continued presenting rebuttal testimony from its witness and raised objections to the Township's cross-examination. Again, this Court holds that by its continuing participation on the record in numerous subsequent hearings, which included presenting testimony and evidence, cross-examining witnesses, and challenging evidence presented by the Township, SECCRA manifested its agreement to an extension of time within which the Board held the hearings on its application.

■ Finally, SECCRA argues that because the Township conducted more hearings to present its case after its first 100 days than did SECCRA, SECCRA is entitled to a deemed approval. Section 908(1.2) states in part that:

An applicant shall complete the presentation of his case-in-chief within 100 days of, the first hearing.... Persons opposed to the application shall complete the presentation of their opposition to the application within 100 days of the first hearing held after the completion of the applicant's case-in-chief. An applicant may, upon request, be granted ad-

---

5. The following discussion took place on the record:

> THE HEARING OFFICER: At this time, October 20th, 6:00—
> MR. LEGG: Before you do that, SECCRA has to protest. We are going almost two months to the next hearing—close to two months without a hearing. That's just too far. I protest. That's not right. We are not getting a prompt hearing. We have been here over a year now. We are still—
> THE CHAIRMAN: I think this Board has made reasonable attempts at every attempt.
> MR. LEGG: I don't dispute that. But I say it's not sufficient. You did the best you could. Best you could was not sufficient. We have got to go faster.
> MR. NELSON: I feel that way about Congress with all that 9/11 terrorism board but they are still out.

> MR. SCOTT–HARPER: Could we pick more than one date?
> (Discussion off the record.)
> MR. LEGG: I want to go on the record here. We just have to reorganize our calendars. We cannot put this as low case on the totem pole.
> THE CHAIRMAN: I think you're getting more than three people in a room looking at calendars. This is just the realities of trying to schedule something. I'm sure this isn't new to you.
> (Discussion off the record.)
> THE CHAIRMAN: Back on the record. After much back and forth, seems the parties have picked two days in October, October 13th at 6:00, October 20th, at 6:00 for the next two conditional use hearings in this matter.
> (Board Hr'g Tr. at 1091–92, Aug. 26, 2004.)

ditional hearings to complete his case-in-chief provided the persons opposed to the application are granted an equal number of additional hearings. Persons opposed to the application may, upon the written consent or consent on the record by the applicant and municipality, be granted additional hearings to complete their opposition to the application provided the applicant is granted an equal number of additional hearings for rebuttal.

53 P.S. § 10908(1.2). Contrary to the statement of facts in SECCRA's brief, SECCRA's first hearing was held on October 22, 2003. In its brief, SECCRA characterizes its first hearing as occurring on November 20, 2003. This ignores, however, the initial hearing scheduled by the Board at which SECCRA could have begun presenting its case. Instructively, the Supreme Court, in *Wistuk*, examined what constitutes a hearing for the purposes of the time periods set out in Section 908. In *Wistuk*, the Court, relying on Section 908(5) of the Municipalities Planning Code, 53 P.S. § 10908(5), characterized a hearing as a proceeding at which a party has the *opportunity* to present evidence and argument and respond to the opposing party's evidence and argument. *Wistuk*, 592 Pa. at 430–31, 925 A.2d at 775. Although it chose instead to seek a continuance, SECCRA did have the opportunity, had it cho-sen to do so, to begin presenting its case at the meeting of the Board on October 22, 2003. Therefore, this meeting constituted a hearing and began the 100 days during which SECCRA had to present its case-in-chief. This 100–day period elapsed on January 30, 2004. After January 30, 2004, SECCRA used four additional hearings to present its case. Those hearings were held on February 18, 2004, March 22, 2004, April 26, 2004 and May 3, 2004. The Township began presenting its case at the hearing on May 24, 2004. The 100–day period during which the Township had to present its case began on May 24, 2004 and elapsed on September 1, 2004. The Township used four hearings after this date to present its case. Those hearings were held on October 13, 2004, October 20, 2004, November 22, 2004, and December 20, 2004. In total, SECCRA and the Township each used four hearings after each party's 100–day period elapsed.[6] Therefore, SECCRA has no right to a deemed approval of its application on the grounds that Township used more hearings after its first 100 days than did SECCRA.

For these reasons, we affirm the order of the trial court.

### ORDER

**NOW,** July 30, 2008, the Order of the Court of Common Pleas of Chester County

---

**6.** Even if the November 20, 2003 hearing was considered to be SECCRA's first hearing at which its 100–day period should begin, SECCRA's argument on this issue would still lack merit. Under this reckoning, the Township would have taken one more hearing after its first 100 days to present its case-in-chief than did SECCRA. Section 908(1.2) states that "[p]ersons opposed to the application may, *upon the written consent or consent on the record by the applicant* and municipality, be granted additional hearings to complete their opposition to the application provided the applicant is granted an equal number of additional hearings for rebuttal." 53 P.S. § 10908(1.2). SECCRA exhibited its consent to the Township's extra hearing by continuing to participate on the record during this hearing, cross-examining the Township's witness, Mr. Evans, and presenting its own rebuttal witness, Mr. Farrington. SECCRA further exhibited its consent, on the record, to the Township's additional hearing by taking advantage of not one, but two additional rebuttal hearings granted to it by the Board on March 23, 2005 and April 13, 2005. Because SECCRA consented to any additional hearing the Township might have had, it does not have a right to a deemed approval under Section 908(1.2).

in the above-captioned matter is hereby **AFFIRMED.**