In Re: Appeal of Shawn F. McGLYNN, Martin Boksenbaum, Jann Dillman, Donald L. Ryan, Jr., Marylou E. Walck, and Trevor S. Jones From the Decision of The Board of Supervisors of Lehigh Township Granting Conditional Use Approval to L.U.R.R.S.

Appeal of: Shawn F. McGlynn, Martin Boksenbaum, Jann Dillman, Donald L. Ryan, Jr., Marylou E. Walck, and Trevor S. Jones.

Commonwealth Court of Pennsylvania.

Argued April 2, 2009.

Decided May 21, 2009.

H. Peter Nelson, Perkasie, for appellants.

Matthew J. Goodrich, Bangor, for appellee, L.U.R.R.S.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge (P), and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

An important issue in this appeal is whether the failure to strictly comply with the public notice provisions of the Pennsylvania Municipalities Planning Code (Code)[1] resulted in a denial of procedural due process so as to render a decision on a conditional use application void *ab initio*.

The Board of Supervisors (Board) of Lehigh Township (Township) granted a conditional use application (Use Application) filed by L.U.R.R.S. (Applicant). The Use Application sought approval for development of a mobile/manufactured home park. Objectors,[2] who actively participated in multiple hearings on the Use Appli-

---

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

2. Objectors are Shawn F. McGlynn; Martin Boksenbaum; Jann Dillman; Donald L. Ryan, Jr.; Marylou E. Walck; and, Trevor S. Jones.

cation, appealed the Board's decision to the Court of Common Pleas of Northampton County (trial court). In addition to challenging the Township's notice procedures, Objectors asserted Applicant does not own all the property subject to the Use Application, the Application is moot, and the Application failed to meet the standards of the Lehigh Township Zoning Ordinance (Ordinance) for the grant of a conditional use application and for a mobile/manufactured home park. The trial court affirmed the Board's decision, and Objectors appeal. We affirm.

## I. History

In June 2004, Applicant filed the Use Application with the Township seeking to construct a mobile/manufactured home park on property located along Mountainview Drive (Property). The 103–acre Property is located in a Village Residential District (VR), which permits a mobile/manufactured home park as a conditional use. Applicant proposed to construct 245 single-family homes designated as North Woods Manufactured Home Community.

The Township Planning Commission recommended approval of the Use Application. Accordingly, the Township advertised that the Board would hold a public

hearing on the Use Application at its January 31, 2006 meeting. The public notice appeared in the January 19, 2006 edition of a local newspaper of general circulation. The Township also published a second notice of the public hearing in the January 23, 2006 edition of the same newspaper. These publications occurred four days apart.

The Board held the conditional use hearing as scheduled. Applicant submitted evidence in support of its Use Application and Objectors, representing themselves, cross-examined Applicant's witnesses. The Board's hearing did not conclude on January 31; rather, the Board held additional hearings on February 28 and March 27, 2006. Objectors again actively participated in the hearings by cross-examining Applicant's witnesses and offering evidence.

In a comprehensive decision, the Board set forth findings of fact and conclusions of law, and examined each conditional use requirement of the Ordinance as well as the specific requirements of a mobile/manufactured home park. It concluded Applicant showed compliance with all zoning requirements and, therefore, granted the Use Application with conditions.[3]

---

**3.** The Board imposed the following conditions:
    1. All internal roads shall remain private.
    2. A planted buffer will extend along the entire south side of this southernmost detention basin.
    3. A traffic fee of $400.00 per unit shall be paid to the Township, which can be used by the Township without restriction. The $400 per unit fee shall be paid to the Township as an occupancy permit is issued for each structure.
    4. The roadway into [a neighboring development] shall be barricaded so that it will only be available for emergency use.
    5. Sidewalks shall be provided along one (1) side of each interior street.
    6. If and when requested by the Township, [Applicant] shall place under drains be-

neath Butternut Drive at locations to be chosen by the Township, upon a showing that the stormwater which reaches the drain location originates from [North Woods].
    7. Applicant shall provide a wetlands delineation (completed by the Army Corps of Engineers) properly certified and shall not encroach on any wetlands except in compliance with the Department of Environmental Protection [DEP] regulations.
    8. The Township requirements regarding stormwater design and control shall be met in conjunction with any new submission or with the pending land development application to be finalized only after the wetlands determination is final.
    9. Applicant shall meet all DEP and [Delaware River Basin Commission] require-

Retaining counsel, Objectors appealed the Board's decision to the trial court. Among a variety of motions, Objectors sought to reopen the record. Certified Record (C.R.) Item 9. Objectors also asserted Applicant engaged in unauthorized tree clearing on the Property. The trial court ordered that *"the entire matter will be remanded to the [Board] for purposes of presentation of any additional testimony and evidence." Id.* (emphasis added).

The Board held remand hearings in April, May and June 2007. Objectors through Counsel actively participated in the remand hearings. In October 2007, the Board issued a second decision confirming its May 2006 decision as modified by an interim stipulation between the Township and Applicant. Addressing the matters subject to remand, the Board noted the wetlands issue arose during the first round of conditional use hearings and, as a result, it imposed Conditions 7, 8 and 10, noted below. Concerning the utility easement, the Board observed that relocation of homes, roads, and water retention basins impacted by the easement would be addressed in the subdivision and land development process. Finally, the Board explained the Township previously issued and withdrew a violation notice regarding tree removal on the Property. In short, the Board found the testimony on remand did not affect its decision on the Use Application.

■■■ Objectors filed a second appeal to common pleas court. A different trial judge heard Objectors' appeal. The trial court affirmed.[4]

## II. Present Appeal

Objectors assign five errors in the Board's determination granting the Use Application. Objectors first assert the Township failed to strictly comply with the notice provisions of the MPC. Contrary to statute, the Township published two notices of the Board's first conditional use hearing only four days apart. Statutory law requires publication five days apart.

Objectors also assert Applicant does not own all the land on which it seeks to construct the mobile/manufactured home park and failed to provide authorization to include the unowned land in its Use Application. Objectors' third issue is whether the modifications to the site plan render the Use Application moot.

In their final two issues, Objectors maintain the Use Application does not comply with the Ordinance's general requirements, as well as the specific requirements for mobile/manufactured home parks. We address each argument in turn.

---

ments regarding water supply and aquifer draw-downs and all DEP and Lehigh Township Municipal Authority requirements regarding sanitary discharge and transmission.

10. A hydraulic soils determination/evaluation shall be performed and reviewed and found satisfactory by the Township Engineer.

11. Applicant shall provide a bus terminal at the entrance of the [manufactured] home park.

12. Applicant shall make reasonable efforts to reach an agreement with any neighboring property owner regarding the discharge of water onto the property owner's premises. Those property owners shall include but not be limited to [Objectors].
Bd. Dec., 5/10/06, at 17–18.

4. Where the trial court took no additional evidence, we are limited to determining whether the zoning hearing board abused its discretion or committed an error of law. *Panzone v. Fayette County Zoning Hearing Bd.,* 944 A.2d 817 (Pa.Cmwlth.2008). An abuse of discretion occurs where substantial evidence does not support the board's findings. *Baker v. Chartiers Twp. Zoning Hearing Bd.,* 677 A.2d 1274 (Pa.Cmwlth.1996).

## III. Discussion

### a. Notice

■■■ The first issue Objectors raise involves the concept of procedural due process. The fundamental components of procedural due process are notice and opportunity to be heard. *Pessolano v. Zoning Bd. of Adjustment of City of Pittsburgh,* 159 Pa.Cmwlth. 313, 632 A.2d 1090 (1993).

Regarding *only* the conditional use hearing held January 31, 2006, the Township advertised the Board's hearing on January 19 and then again on January 23. The publications occurred four days apart and, according to Objectors, constituted insufficient public notice under the MPC. There are no assertions that the Board failed to publish notice of the remaining five conditional use hearings held in 2006 and 2007. It is also important to note Objectors do not assert any harm resulting from the Township's failure to twice advertise the first conditional use hearing at least five days apart.

Section 908(1) of the MPC requires public notice of Board hearings. 53 P.S. § 10908(1). Section 107 of the MPC defines "public notice" as

> notice published once each week for two successive weeks in a newspaper of general circulation in the municipality. Such notice shall state the time and place of the hearing and the particular nature of the matter to be considered at the hearing. The first publication shall not be more than 30 days and the second publication shall not be less than seven days from the date of the hearing.

53 P.S. § 10107.

The MPC does not define the term "successive weeks." We therefore look to the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991, to construe the term's meaning. It provides that whenever any statute uses the phrase "successive weeks" in reference to publishing of notices, the weeks "shall be construed as calendar weeks [and the] publication upon any day of such weeks shall be sufficient publication for that week, but at least five days shall elapse between each publication." 1 Pa.C.S. § 1909.

At this juncture, the parties agree the Township's two notices of the Board's January 31 hearing were published four days apart instead of five days, as required by Section 1909.[5] The question then is the result of the defect on the Use Application.

At the outset, we observe Objectors failed to raise their public notice concerns at *anytime* before the Board and, therefore, deprived it of an opportunity to discontinue the proceedings and start anew. Nevertheless, Objectors cite several appellate decisions for the proposition that strict compliance with the MPC's notice provisions is mandatory and any deviation renders the local agency's decision void *ab initio. See Luke v. Cataldi,* 593 Pa. 461,

---

**5.** Section 1908 of the Statutory Construction Act provides for the computation of time when referenced in a statute. 1 Pa.C.S. § 1908. However, Section 1908 does not apply to Section 1909, above. *Id.* The trial court therefore looked to the Rules of Civil Procedure to determine the number of days between publications of the hearing notices. Specifically, Rule 106 provides that when any period of time is referenced in the rules, the period shall be computed by excluding the first day and including the last day of any such period. Pa. R.C.P. No. 106. In this case, the first day of the five-day period was January 20 and the last day was January 23; thus, only four days lapsed between publications. Nevertheless, the trial court recognized liberal construction of the rules of civil procedure is required so long as the error does not affect the substantial rights of the parties. *See* Pa. R.C.P. No. 126. As more fully explained, the publication error did not affect the parties' substantive rights.

932 A.2d 45 (2007) (alleged failure to provide public notice or public hearing before granting conditional use application would render board's decision void *ab initio;* remanded for further proceedings); *Glen–Gery Corp. v. Zoning Hearing Bd. of Dover Twp.,* 589 Pa. 135, 907 A.2d 1033 (2006) (a claim alleging a procedural defect affecting notice or due process rights in the enactment of an ordinance may be brought beyond statutory appeal period because, if proven, ordinance is void *ab initio* ); *Schadler v. Zoning Hearing Bd. of Weisenberg Twp.,* 578 Pa. 177, 850 A.2d 619 (2004) (failure to make full text of proposed amendment to zoning ordinance available for public comment rendered subsequent enactment of the amendment void *ab initio* ); *Lower Gwynedd Twp. v. Gwynedd Props., Inc.,* 527 Pa. 324, 591 A.2d 285 (1991) (failure to publish entire text of ordinance as required by The Second Class Township Code [6] rendered ordinance void).

After careful consideration, we do not believe reversal of the Board's decision is compelled here where Objectors received all process due and asserted no claim of prejudice or harm.

■ The statutory notice and publication requirements are to ensure the public's right to participate in the consideration and enactment of municipal land use decisions. *Lower Gwynedd Twp.* In other words, the notice provisions protect procedural due process. The concept of due process, however, is a flexible one and imposes only such procedural safeguards as the situation warrants. *LaFarge Corp. v. Ins. Dep't,* 557 Pa. 544, 735 A.2d 74 (1999); *Fountain Capital Fund, Inc. v. Pa. Secs. Comm'n,* 948 A.2d 208 (Pa.

Cmwlth.2008), *appeal denied,* —— Pa. ——, 967 A.2d 961 (2009). Demonstrable prejudice is a key factor in assessing whether procedural due process was denied. *State Dental Council & Examining Bd. v. Pollock,* 457 Pa. 264, 318 A.2d 910 (1974).

The seminal case addressing due process is *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Factually, *Mathews* concerned the Social Security Administration's decision to discontinue cash benefits without affording the recipient a pre-decisional hearing. The United States Supreme Court rejected the recipient's claim that due process required the agency to hold a hearing prior to terminating benefits. In doing so, the Court considered what process is due an individual before a property interest may be affected by government action. It identified three factors that must be considered in formulating the process due: the private interest affected by the government action; the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the administrative burdens that additional or substitute procedural requirements would entail. *Id.* at 335, 96 S.Ct. 893.[7] We address each of these considerations.

First, we recognize Objectors have an interest in the quiet use and enjoyment of their properties near the proposed use, as well as the right to participate in the Board's hearings. Here, however, we discern no deprivation of Objectors' interests. In *Pessolano,* neighboring property owners appeared at a zoning hearing to oppose

---

**6.** Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 6018.101–6018.1003.

**7.** The Court ultimately held the agency's post-deprivation procedures sufficiently safeguarded the recipient's property interest in continued benefits.

a landowner's application for a special exception. The zoning board denied the application, and the landowner appealed to common pleas court. The landowner did not serve the neighboring property owners with a notice of appeal. On appeal, the court reversed the zoning board's decision, granted the special exception, and imposed conditions on the property's use.

After the appeal period lapsed, the neighboring property owners petitioned to vacate the court's order on the basis they were denied the opportunity to intervene in the landowner's appeal. They cited a city zoning ordinance requiring an appealing party to notify all persons appearing before the zoning hearing board of an appeal. Sustaining the landowner's preliminary objections, the common pleas court dismissed the petition to vacate. Of import, the court concluded the landowner's failure to strictly comply with the city ordinance did not warrant reversal of its decision because the property owners did not claim lack of actual knowledge of the landowner's appeal.

We affirmed. Cognizant of the procedural safeguards that notice provisions are to provide, we stated the value and necessity of strict compliance with the notice requirements is diminished where the interested parties have actual notice of the legal proceedings. "[A]ctual notice serves to accomplish the same purposes that legal notice is intended to accomplish. Both forms of notice serve to make interested parties aware of the opportunity to exercise their legal rights." *Id.* at 317, 632 A.2d 1090.

Applying the above principle here, Objectors had actual notice of the Board's first conditional use hearing and actively participated at that time. At no time during the six Use Applications hearings did Objectors assert to the Board lack of actual notice of the first hearing or defective publication of the required notices. *Cf. Citimortgage, Inc. v. KDR Invs., LLP,* 954 A.2d 755 (Pa.Cmwlth.2008) (the formal requirements of statutory notice for sale of property for nonpayment of taxes need not be strictly met where actual notice is established); *Aldhelm, Inc., v. Schuylkill County Tax Claim Bureau,* 879 A.2d 400 (Pa.Cmwlth.2005) (same).

Second, the ongoing proceedings here did not risk depriving Objectors of their interests. At the conclusion of the first hearing, the Board announced its intention to hold a second hearing. Likewise, the Board announced a third hearing at the conclusion of the second hearing. It also indicated it would publish notice of the upcoming hearings in a local newspaper and post the Township building. *See* C.R., Notes of Testimony (N.T.), Vol. I at 147–48; Vol. II at 147.

Most significantly, Objectors and their counsel fully participated in the remand proceedings. The scope of the remand was not limited; rather, Objectors were able to call any witness and offer any appropriate document. Thus, their interests were fully protected.[8] Objectors' par-

---

[8]. Our recent decision in *Southeastern Chester County Refuse Authority v. Board of Supervisors of London Grove Township,* 954 A.2d 732 (Pa.Cmwlth.2008), is also instructive on this point. There, the Southeastern Chester County Refuse Authority (SECCRA) filed an application to expand its landfill. The township board of supervisors held hearings on the application over an 18–month period. After denial of its application, SECCRA claimed the board failed to schedule the hearings in compliance with the MPC and, thus, it was entitled to a deemed approval. We affirmed the denial of SECCRA's application. Important to our decision was the fact that SECCRA actively participated in the board's decisions and challenged the evidence opposing its application over the 18–month period. It never asserted its right to a deemed approval during that time. In sum, we concluded SECCRA's

ticipation with counsel during the unrestricted remand hearings acted to cure any deficiency in notice of the original set of hearings. Indeed, Objectors do not assert prejudice by the manner of publishing notice of the first of the original set of hearings.

Third, we consider the Township's interests and burden in curing the defective notices of the first hearing. It is conceivable that the entire application process would start anew. The Township would again incur advertising costs and counsel fees to cover the same material already offered in the previous six hearings. Objectors do not suggest any different information would be offered at new proceedings. Under these circumstances, a similar result is expected, and Objectors' challenge to the proposed use would likely result in appeals again. The financial and administrative burdens on the Township are obvious.

In summary, Objectors do not claim harm resulting from the Township's failure to twice advertise the first conditional use hearing in strict compliance with the MPC. Objectors' interests were protected by their active participation during the initial set of hearings and by their active participation with counsel during unrestricted remand hearings. Absent a showing of discernible harm, a denial of due process claim must fail.

### b. Property Ownership

■ In this issue, Objectors assert a different entity, Nikki, Inc., owns a signifi-

cant portion of the Property on which Applicant seeks to construct the manufactured home park. Applicant, according to Objectors, failed to prove it has authority to include the Nikki property in the Use Application.

Relevantly, Applicant is a general partnership. James Leuthe is a partner in Applicant and is sole owner of Nikki, Inc. Applicant and Nikki, Inc. each own a portion of the Property, but neither entity has a legal interest in the other. Objectors maintain since Applicant has no legal relationship to Nikki, Inc., and it failed to produce evidence of permission to include Nikki's land in the Use Application, the Board erred in granting the Use Application.

■ As with the issue of public notice, Objectors failed to raise the issue of Property ownership before the Board. We read the Board hearing transcripts, and note ownership of the Property was discussed in the context of tree clearing and an undisclosed PPL easement. At no time did Objectors assert Applicant lacked a sufficient ownership interest in the Property to proceed with the Use Application. Objectors' failure to raise this issue before the Board results in waiver. *Mack v. Zoning Hearing Bd. of Plainfield Twp.*, 126 Pa.Cmwlth. 80, 558 A.2d 616 (1988) (objectors waived issue regarding posting of property where they failed to raise the issue before the zoning hearing board); *see* Bd. Decs. 5/10/06; 10/23/07.[9]

active participation in hearing subsequent to the date it could have asserted a deemed approval under the MPC manifested its agreement to an extension of time for a board determination.

*Southeastern Chester County Refuse Authority* confirms that a party's actions which are contrary to the rights it seeks to assert may result in waiver of the claimed right. Here, Objectors should have asserted the Town-

ship's publication of the first Use Application hearing was defective at the start of the first hearing. They compounded the issue by failing to raise it before the Board at any of the other five hearings.

9. Moreover, a merits review of Objectors' claim does not compel reversal of the Board's decision. Section 114.2.17 of the Ordinance defines "applicant" as "[a] landowner or de-

### c. Mootness of Use Application

■ Objectors assign further error in the Board's grant of the Use Application where Applicant admitted modifications to the site plan are necessary. Specifically, Applicant's witnesses testified at the remand hearings that revisions to the site plan (as filed) are necessary because of wetlands and a second utility easement. Because roadways, homes, and water basins must be relocated, Objectors contend the Use Application is moot.

In support of their position, Objectors direct our attention to Section 704.5 of the Ordinance, which provides in relevant part:

> [a]pproval of any conditional use will also bind the use in accordance with the submitted site plan; therefore, should a change in the site plan be required as part of the approval of a use, the appli-

cant shall revise the site plan prior to issuance of the zoning permit. *Any subsequent change to the use on the subject property, not reflected on the originally approved site plan, shall require another conditional use approval to be obtained.*

Ordinance § 704.5 (emphasis added). The Ordinance further defines "use" as "[t]he specific purpose for which land or a structure is designed, arranged, intended, occupied or maintained." Ordinance § 114.2.243.

We reject Objectors' argument for several reasons. First, the language of the Ordinance requires a new conditional use approval where the applicant seeks to change an approved *use* of the property. Here, modifications to the site plan will not change the use of the Property from a

veloper ... who has an application for development including his heirs, successors and assigns." Ordinance § 114.2.17. In turn, "landowner" is defined as "[t]he legal or beneficial owner or owners of land including ... a lessee if he is authorized under the lease to exercise the rights of the landowner, or *other person having a proprietary interest in the land* ...." *Id.* at § 114.2.123 (emphasis added). "Developer" is defined as "[a]ny landowner, agent of such landowner, or tenant with the permission of the land-owner, who makes or causes to be made a subdivision of land or a land development." *Id.* at § 114.2.68.

The record discloses a close relationship between Nikki, Inc. and Applicant. Mark Leuthe testified that his father, James Leuthe, is a general partner in Applicant and is sole owner of Nikki. As such, Mr. Leuthe owns all of the Property in some capacity. Concomitantly, Applicant, acting as Mr. Leuthe's agent, meets the Ordinance's definition of developer.

Our conclusion is supported by general agency law principles. By filing the Use Application, Applicant has apparent authority to act on behalf of Mr. Leuthe as owner of Nikki and partner in L.U.R.R.S. Apparent authority is the "power to affect the legal relations of another person by transactions with third per-

sons, professedly as agent for the other, arising from and in accordance with the other's manifestations to third persons." *Commonwealth v. One 1991 Cadillac Seville,* 853 A.2d 1093, 1096 (Pa.Cmwlth.2004) (quoting Restatement (Second) of Agency § 8 (1958)). It exists when a principal, by words or conduct, leads people with whom the alleged agent deals to believe the principal has granted the agent authority he or she purports to exercise. *One 1991 Cadillac Seville.* "Apparent authority may result when a principal permits an agent to occupy a position which, 'according to the ordinary experience and habits of mankind, it is usual for that occupant to have authority of a particular kind.'" *Id.* at 1096 (quoting *E. Girard Sav. & Loan Ass'n v. Houlihan,* 373 Pa. 578, 580, 97 A.2d 23, 24 (1953)).

Given Mr. Leuthe's position in both companies, the Board could have inferred Applicant had authority to act on behalf of Nikki Inc. in the development project. *See Bensalem Twp. v. Press,* 93 Pa.Cmwlth. 235, 501 A.2d 331 (1985) (evidence must be viewed in a light most favorable to the prevailing party, who must be given the benefit of all reasonable inferences arising from the evidence). Thus, we discern no merit in Objectors' assertions that Applicant lacked authority to include portions of the Property owned by Nikki, Inc. in its Use Application.

manufactured home park to something else. Site plan modifications alone do not require submission of a new conditional use application. Moreover, there is no evidence suggesting Applicant is seeking to change the current approved use to a different use.

Further, conditional use proceedings usually involve only the proposed use of the land, and do not involve the full design details of the proposed development. *In re Thompson*, 896 A.2d 659 (Pa.Cmwlth. 2006). The MPC permits a local subdivision and land development ordinance to address the layout of a subdivision plan. *See generally* Section 503 of the MPC, 53 P.S. § 10503. Thus, location of the features affected by the wetlands and utility easement will be determined during the subdivision and land development process.

■■■ A conditional use applicant must demonstrate compliance with the express standards and criteria of the zoning ordinance, which will vary from ordinance to ordinance. *Id.* Here, the Ordinance's specific conditional use criteria require Applicant to show: floor plans and elevations of the proposed structures; names and addresses of adjoining property owners; and, a scaled drawing of the site plan and a written description of the proposed use, both with sufficient detail to show compliance with the Ordinance. Ordinance § 704.2. The Ordinance also sets forth general criteria for a conditional use, but they are not implicated here. *See id.* at § 704.3.

Applicant is seeking to construct a manufactured home park on 103 acres in the Township. The Use Application contained floor plans for the proposed homes. The site plan indicated locations for the homes as well as roadways, a recreational area, and water basins and, thus, complies with Ordinance § 704.2. While some of the features may be relocated, the Ordinance does not require the exacting level of specificity Objectors claim. Indeed, majority of the site plan remains unaffected by the wetlands and utility easement. *See* Remand Ex. 9 (modified site plan identifying the affected area).

Finally, the import of Objectors' argument on this issue is that the Board abused its discretion in approving the Use Application with *conditions* rather than denying the Application outright. *See Leckey v. L. Southampton Twp.* 864 A.2d 593 (Pa.Cmwlth.2004) (*en banc*) (where board is authorized by the MPC to attach conditions it may deem necessary, review proceeds under an "abuse of discretion" standard). Our Supreme Court, however, recently clarified the approval with conditions analysis. In *Broussard v. Zoning Board of Adjustment of City of Pittsburgh*, 589 Pa. 71, 907 A.2d 494 (2006), the Court distinguished between an applicant who merely promises to bring a non-compliant zoning plan into compliance and an applicant who reasonably shows the ability to fulfill requirements. No abuse of discretion will be found in granting conditional approval to the latter. In this case, the Board could properly conclude that Applicant reasonably showed the ability to fulfill the site plan requirements.

Similarly, in *Kohr v. Lower Windsor Township Board of Supervisors*, 910 A.2d 152 (Pa.Cmwlth.2006), this Court concluded that where permits from an agency outside the municipality are required for a land development proposal, approving the proposal with the condition that outside agency permits are received is appropriate. In this case, approval conditioned on input from the Army Corps of Engineers and the Department of Environmental Protection regarding wetlands delineation is appropriate. No abuse of discretion is evident in the conditional approval.

### d. Compliance with the Zoning Ordinance

In the following discussion, we address Objectors' assertions that Applicant's proposed dwellings are not manufactured homes, and that Applicant failed to meet the specific requirements for a mobile/manufactured home park under Section 435 of the Ordinance and the general conditional use requirements found in Section 704 of the Ordinance. Objectors also assert Applicant engaged in unlawful earthmoving activities.

■ Preliminarily, we note, the existence of a conditional use provision in a zoning ordinance indicates legislative acceptance that the use is consistent with the zoning plan and a use application should only be denied where the adverse impact on the public interest exceeds that which might be expected in normal circumstances. *In re Application for Conditional Use Approval of Saunders,* 161 Pa. Cmwlth. 392, 636 A.2d 1308 (1994). An applicant for a conditional use has the initial burden of proving compliance with the specific criteria set forth in a zoning ordinance. *K. Hovnanian Pa. Acquisitions, LLC v. Newtown Twp. Bd. of Supervisors,* 954 A.2d 718 (Pa.Cmwlth.2008). Once the applicant shows compliance with the ordinance, the conditional use application must be granted unless objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety and welfare. *In re Thompson.*

■ Moreover, what must be proven in order to obtain conditional use approval is determined on a case by case basis and will vary among municipalities based on the use requested and the language of the ordinance. *Id.* It is well established that an interpretation of a zoning ordinance by the agency charged with its execution and application is given great deference. *In re Brickstone Realty Corp.,* 789 A.2d 333 (Pa.Cmwlth.2001).

### 1. Manufactured Homes

■ Objectors assign error in the Board's finding that Applicant's proposed dwellings are manufactured homes. As previously noted, manufactured home parks are a conditional use in a VR district. The Ordinance, however, does not define the term "manufactured home." [10]

In its decision, the Board cited the definition of manufactured home as it appears in the International Residential Code:

> a structure, transportable in one or more sections, which in traveling mode is 8 body feet or more in width or 40 body feet more in length, or, when erected on site is 320 square feet or more and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning and electrical systems contained therein.

Bd. Op. 5/10/06, at 10. The Board also noted the International Residential Code provides that mobile homes are, in fact, considered manufactured homes. Id.[11]

---

10. Objectors initially assert Applicant's proposed dwellings do not meet the definition of mobile home under Ordinance § 114.2.143 or the former Uniform Standards Code for Mobile Homes, Act of May 11, 1972, P.L. 281, *as amended,* formerly 35 P.S. §§ 1655.1–1655.10, *repealed by* the Manufactured Housing and Construction and Safety Standards Authorization Act, Act of November 17, 1982,

P.L. 676, *as amended,* 35 P.S. §§ 1656.1–1656.9. Because the Board determined the proposed dwellings are manufactured homes, we see no need to address Objectors' argument. Bd. Op., 5/10/06 at 10.

11. The Township adopted the International Residential Code in 2003. Bd. Dec., 5/10/06 at 10.

■ Objectors assert a variety of reasons why Applicant's proposed dwellings are not manufactured homes. However, their argument disregards the basic tenet that an agency's interpretation of its own zoning ordinance is entitled to great deference and weight. *Arter v. Phila. Zoning Bd. of Adjustment,* 916 A.2d 1222 (Pa. Cmwlth.), *appeal denied,* 594 Pa. 691, 934 A.2d 75 (2007). In addition, "[w]hen interpreting zoning ordinances, this Court relies on the common usage of words and phrases and construes language in a sensible manner." *City of Hope v. Sadsbury Twp. Zoning Hearing Bd.,* 890 A.2d 1137, 1143–44 (Pa.Cmwlth.2006).

Here, the Board relied on Applicant's witness's testimony that the proposed dwellings are built off-site and subsequently shipped to the building site in two parts. *See* Bd. Op. 5/10/06, at 10; C.R., N.T., Vol. III, at 70. The dwellings will sit on piers, and their wheels and axels will be removed. *Id.* The Use Application contained two floor plans for the proposed dwellings; each model consists of at least 1800 square feet. These dimensions meet the requirements of the International Residential Code. *See* C.R., N.T., Vol. IV, at T–1.

In view of the above, and given our deferential review of an agency's interpretation of its zoning ordinance, we conclude the Board's interpretation of the term "manufactured home" is reasonable. Therefore, we discern no error in the Board's determination that Applicant's proposed dwellings constitute manufactured homes under the Ordinance.

## 2. Requirements of Ordinance Sections 435 and 704

■ Objectors further maintain Applicant failed to demonstrate compliance with Sections 435 (relating to mobile/manufactured home parks) and 704 (relating to conditional uses). Their particular concerns address Section 435's requirements of a buffer yard, a recreational area, distances between dwellings and street setbacks. For these reasons, Objectors also assert the Use Application does not contain a scaled drawing with sufficient detail as required by Section 704.2.3 of the Ordinance.

For the most part, Objectors contend the Use Application does not comply with Section 435 because the site plan must be revised.[12] However, Applicant's witness reviewed each requirement of Section 435 and indicated how the Use Application complied with the Ordinance. *See* C.R., N.T., Vol. I, at 65–67; Vol. IV, at T–1. On remand, Applicant's witness admitted certain development features will need to be relocated due to the wetlands and utility easement. There is nothing the record suggesting relocation of features will impact on the buffer zone, recreational area, distances between dwellings, or street setbacks. In fact, Applicant's witness testi-

12. Conceding the Use Application shows the required buffer zone and recreational area, Objectors also contend Applicant must delineate what type of greenery will be planted in the buffer area and indicate whether the recreational area will be a playground or level playing field. While Ordinance § 309 specifically addresses landscaping buffers, nothing in Section 704, governing conditional uses, requires an applicant identify its particular landscaping details prior to use approval.

In addition, Section 435.8 of the Ordinance requires a mobile/manufactured home park to have a minimum of 1,000 square feet per dwelling unit dedicated to an active playground or level field suitable for play. Alternatively, a mobile/manufactured home park may substitute walking trails for a playground, provided the development is limited to persons over age 55. *Id.* Applicant's witness testified the development will have 22 acres of play or walking area even though the Ordinance requires only 5 acres. C.R., N.T., Vol. I, at 65–66. This is sufficient to show compliance with the Ordinance.

fied a number of lots will be lost due to these changes to the plan. C.R., N.T., Vol. VII, at 263. The witness's testimony is supported by the revised site plan submitted on remand. *See* Remand Ex. 9; Reproduced Record at 785a.

As the trial court aptly noted, the Board provided a thorough analysis of the Ordinance criteria and concluded Applicant satisfied each requirement. The well-developed record supports the Board's conclusions. The Board's findings therefore cannot be disturbed on appeal. *Hellam Twp. v. Hellam Twp. Zoning Hearing Bd.*, 941 A.2d 746 (Pa.Cmwlth.2008).

### 3. Earthmoving Activities

In this final assignment of error, Objectors contend Applicant engaged in unauthorized earthmoving activities (tree clearing) without the required permits. This issue is simply not relevant to consideration of whether Applicant met its burden of proving its Use Application complies with the Ordinance. To the extent Applicant's activities could affect the Board's credibility determinations, we may not substitute our judgment for that of the zoning hearing board. Rather, we are bound by the board's credibility determinations and assignment of evidentiary weight. *In re Rural Route Neighbors*, 960 A.2d 856 (Pa.Cmwlth.2008). Here, the Board stated the clear treeing issues did not impact its decision on the Use Application. Bd. Dec., 10/23/07 at 6.

### IV. Conclusion

For the reasons set forth above, we affirm the trial court's order affirming the decision of the Board of Supervisors of Lehigh Township granting Applicant's conditional use application for construction of a manufactured home park.

### *ORDER*

AND NOW, this 21st day of May, 2009, the order of Court of Common Pleas of Northampton County is **AFFIRMED.**