**Charles N. MESSINA, Agnes Messina, Lehigh Asphalt Paving and Construction Co., Appellants**

v.

**EAST PENN TOWNSHIP, Nancy Blaha and Christopher Pekurny.**

Commonwealth Court of Pennsylvania.

Argued March 17, 2010.

Decided May 26, 2010.

518

John A. VanLuvanee, Blue Bell, for appellants.

James R. Nanovic, Jim Thorpe, for appellee, East Penn Township.

Joseph J. Matika, Summit Hill, for appellees, Nancy Blaha and Christopher Pekurny.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SIMPSON, Judge, LEAVITT, Judge, BROBSON, Judge, McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

In this land use appeal, we consider whether a municipality failed to comply with certain procedural requirements for enactment of a zoning ordinance as set forth in the Pennsylvania Municipalities Planning Code (MPC),[1] and whether any failure to do so resulted in a denial of procedural due process so as to render a zoning ordinance enacted 12 years earlier void *ab initio*.[2] Upon review, we conclude the challengers to the zoning ordinance, who declined the offer of a hearing on their procedural validity challenge, did not prove the existence of a procedural defect affecting notice or due process concerns. We further conclude the challengers did not rebut a statutory presumption that the municipality and its landowners substantially relied on the validity and effective-

---

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

2. "The doctrine of void *ab initio* is a legal theory stating that a statute held unconstitutional is void in its entirety and is treated as if it had never existed." *Hawk v. Eldred Twp. Bd. of Supervisors*, 983 A.2d 216, 219 (Pa. Cmwlth.2009).

ness of the zoning ordinance over the 12 years between enactment of the zoning ordinance and the procedural validity challenge. Therefore, we decline to declare the ordinance void *ab initio*.

## I. Background

### A. Procedural History

In August 2008, Charles N. Messina and Agnes Messina and Lehigh Asphalt Paving and Construction Company (Lehigh Asphalt) (collectively, Challengers) filed a procedural validity challenge to the East Penn Township Zoning Ordinance, Township Ordinance No. 1996–94, adopted July 22, 1996 (zoning ordinance), in the Court of Common Pleas of Carbon County (trial court) pursuant to Section 1002–A(b) of the MPC, 53 P.S. § 11002–A(b) [3] and Section 5571.1(a) of the Judicial Code, 42 Pa.C.S. § 5571.1(a).[4]

Pursuant to a writ of *certiorari* issued by the Prothonotary of Carbon County, East Penn Township (Township) filed a record of its proceedings regarding adoption of the zoning ordinance.

Shortly thereafter, the trial court granted petitions to intervene filed by Nancy Blaha and Christopher Pekurny (Interve-

nors), who opposed Challenger's procedural validity challenge.

The trial court [5] subsequently held argument on the validity challenge. Significant for our analysis, at the time of argument the trial court offered to schedule a hearing for any party to submit evidence on the procedural validity challenge; however, no party expressed an interest in doing so. Thus, the trial court confined its review to the documents filed by the Township in response to the Prothonotary's writ of *certiorari*.

### B. Facts

The Messinas are legal owners of a parcel of land in East Penn Township, Carbon County, which is presently used as a quarry. Lehigh Asphalt is the equitable owner of the quarry pursuant to an option contract.

The quarry covers 114.4 acres and is located in the Township's rural and rural residential zoning districts. The Messinas reside in a single-family dwelling on the property. Lehigh Asphalt uses the balance of the property for mining and excavation operations. Challengers assert the zoning ordinance prevents them from expanding their mining and excavation operations.

---

**3.** Section 1002–A was added by the Act of December 21, 1988, P.L. 1329. Section 1002–A(b), which was added by Act 39 of 2008, effective July 4, 2008, states:

Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption shall be raised by appeal taken directly to the court of common pleas of the judicial district in which the municipality adopting the ordinance is located in accordance with 42 Pa.C.S. § 5571.1 (relating to appeals from ordinances, resolutions, maps, etc.).

**4.** Section 5571.1 of the Judicial Code, which was added by Act 40 of 2008, effective July 4, 2008, states, as relevant:

**(a) Applicability; court of common pleas.—**
(1) This section shall apply to any appeal raising questions relating to an alleged defect in the process of or procedure for enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision.
(2) An appeal pursuant to this section shall be to the court of common pleas.
42 Pa.C.S. § 5571.1(a).

**5.** Alan M. Black, S.J., formerly commissioned judge of the Court of Common Pleas of Lehigh County, sat by designation.

Prior to July 1996, the Township did not have a zoning ordinance. The zoning ordinance the Township adopted in July 1996 established a comprehensive zoning scheme effective July 27, 1996. The general effect of the ordinance was "to place[ ] restrictions on the use and development of land in the [T]ownship...." Tr. Ct., Slip Op., 9/14/09, at 4; Reproduced Record (R.R.) at 16a ("Introduction" to zoning ordinance). After its initial adoption, the Township amended the zoning ordinance three times, in 2000, 2001, and 2005, all prior to the present challenge.

The record filed by the Township contained documents relating to the enactment of the zoning ordinance, including Township Planning Commission minutes from meetings that occurred from 1994 through 1996. Also included were proofs of publication dated April 15, May 15 and July 16, 1996, as well as minutes from the 1996 Township Board of Supervisors' (Supervisors) meetings. Additionally, the record contained various letters from concerned Township residents regarding the proposed ordinance, including a letter from resident Greg Solt, suggesting a change to the zoning map.

The record reveals that on July 22, 1996, the night the Supervisors voted to adopt the zoning ordinance, the Supervisors took an initial vote on the zoning ordinance as advertised, but the vote did not produce the votes necessary for adoption. Amendments proposed by Township resident Greg Solt were then made to the proposed zoning map. A second vote was taken, this time on the revised zoning ordinance. On this second vote, the revised zoning ordinance was adopted. The minutes of the July 22, 1996 meeting state in relevant part:

> Joe Ehritz made a motion to adopt the Zoning Ordinance with the Greg Solt's changes on the Zoning Map. Motion was then changed to "as proposed". There being no second, motion did not pass. Joe Ehritz made a motion seconded by Steve Fatzinger to adopt a Pending Ordinance Doctrine. AIF [All in Favor].
>
> Executive session was called at 8:10 p.m. and ended at 8:40 p.m. (litigation).
>
> After further discussion on the Zoning [M]ap, Joe Ehritz made a motion, seconded by Ted Smith to adopt the Zoning Ordinance with the Greg Solt's changes on the Zoning Map. AIF. Changes were made on the map.

Tr. Ct., Slip Op. at 4–5; R.R. at 116a.

The trial court determined that changes were made to the zoning ordinance on the night of its adoption. As a result, the zoning ordinance actually adopted differed to some extent from the zoning ordinance proposed and advertised prior to the meeting. The trial court further determined there was no evidence that the Carbon County Planning Commission reviewed the changes or that Township residents were on notice of the changes prior to the July 22, 1996 meeting.

The trial court further determined it could not discern from the record with certainty the precise change or changes made. The trial court noted (with emphasis added):

> We recognize that the record could be more complete. There are certainly omissions, gaps, and ambiguities probably arising from the lapse of 12 years between the adoption of the ordinance in 1996 and the commencement of the present action in 2008. *That is why we proposed during argument that an evidentiary hearing might be advisable. However, none of the parties desired to present evidence. Therefore, in deciding this appeal, we are limited to the*

*record as transmitted to the prothonotary by the township.*

Tr. Ct., Slip Op. at 5, n. 4.

The trial court further stated it was possible the changes made were those requested in Greg Solt's letter: movement of a boundary line between the "Business Commercial" and "Village Commercial" zoning districts from the east side to the west side of the Repsher subdivision in the Township. Because Lehigh Asphalt's quarry does not abut the Repsher subdivision and is not located in either the Business Commercial Zone or the Village Commercial Zone, the trial court stated that the movement of this boundary line may not have had any impact on the quarry or its proposed expansion.

## C. Trial Court Decision

In a thoughtful and thorough opinion, the esteemed trial court began by analyzing Challenger's assertions regarding the alleged procedural defects in the adoption of the zoning ordinance. The trial court pointed out Challengers identified four alleged procedural defects:

(i) public notice of the proposed amendment published in the Times Leader, a newspaper of general circulation in the county, did not include either the full text of the zoning ordinance or a "brief summary" setting forth the zoning ordinance provisions "in reasonable detail," as required by Section 610(a) of the MPC, 53 P.S. § 10610(a);

(ii) an attested copy of the proposed zoning ordinance was not filed with the Carbon County Law Library as required by Section 610(a)(2) of the MPC, 53 P.S. § 10610(a)(2);

(iii) the zoning ordinance was not re-advertised before adoption after substantial amendments were made to it as required by Section 610(b) of the MPC, 53 P.S. § 10610(b); and,

(iv) the Township did not submit a final version of the zoning ordinance, including all amendments, to the County Planning Commission at least 45 days prior to enactment of the zoning ordinance as required by Section 607(e) of the MPC, 53 P.S. § 10607(e).

Responding to the alleged defects, the trial court determined: the record revealed the published "brief summary" of the zoning ordinance was sufficient to satisfy Section 610(a) of the MPC; Challengers did not submit any evidence to support their contention that a copy of the zoning ordinance was not filed with the county law library, and, in any event, the published notice indicated a copy of the ordinance was, in fact, placed in the law library; and, Challengers did not submit any evidence to support their claim that the Township made substantial changes to the zoning ordinance prior to adoption and, therefore, any alleged failure of the Township to re-advertise the amended ordinance prior to passage was not fatal.

However, the trial court determined that because an amendment to the proposed ordinance was accepted on the night of adoption, it was clear the Township did not submit the final version of the ordinance to the County Planning Commission at least 45 days prior to enactment. Thus, the trial court determined the Township violated the strict requirement of Section 607(e) of the MPC to inform the County Planning Commission of the content of the proposed zoning ordinance, including all amendments, at least 45 days prior to its adoption.

The trial court next embarked on a discussion of Pennsylvania Supreme Court cases that addressed the issue of procedural irregularities in the adoption of municipal ordinances. *See Luke v. Cataldi,* 593 Pa. 461, 932 A.2d 45 (2007); *Glen–Gery Corp. v. Zoning Hearing Bd. of Dover*

*Twp.*, 589 Pa. 135, 907 A.2d 1033 (2006); *Schadler v. Zoning Hearing Bd. of Weisenberg Twp.*, 578 Pa. 177, 850 A.2d 619 (2004); *L. Gwynedd Twp. v. Gwynedd Props., Inc.*, 527 Pa. 324, 591 A.2d 285 (1991).

The trial court further recognized that following the Supreme Court's decision in *Glen–Gery*, the General Assembly took action to limit the application of the void *ab initio* doctrine through an amendment to the Judicial Code, which placed time limits on procedural challenges to an ordinance, even where the procedural defects implicate constitutional issues. *See* 42 Pa. C.S. § 5571.1. The trial court noted the amendment continues the intent of the void *ab initio* doctrine to some extent by allowing procedural challenges to an ordinance after the expiration of the 30–day appeal period to avoid "an impermissible deprivation of constitutional rights." 42 Pa.C.S. § 5571.1(c). However, the General Assembly balanced this provision with a temporal limit on such challenges unless conditions are met. The trial court stated the statute accomplishes this by establishing presumptions and burdens that a challenging party must satisfy in order to invoke the void *ab initio* doctrine. The relevant portions of Section 5571.1 state:

**(b) Appeals of defects in statutory procedure.—**

(1) *Any appeal raising questions relating to an alleged defect in statutory procedure shall be brought within 30 days of the intended effective date of the ordinance.*

(2) Except as provided in subsection (c), it is the express intent of the General Assembly that this 30–day limitation shall apply regardless of the ultimate validity of the challenged ordinance.

**(c) Exemption from limitation.**—*An appeal shall be exempt from the time limitation in subsection (b) if the party*

*bringing the appeal establishes that*, because of the particular nature of the alleged defect in statutory procedure, *the application of the time limitation under subsection (b) would result in an impermissible deprivation of constitutional rights.*

**(d) Presumptions.**—Notwithstanding any other provision of law, appeals pursuant to this section shall be subject to and in accordance with the following:

(1) An ordinance shall be presumed to be valid and to have been enacted or adopted in strict compliance with statutory procedure.

(2) In all cases in which an appeal filed in court more than two years after the intended effective date of the ordinance is allowed to proceed in accordance with subsection (c), the political subdivision involved and residents and landowners within the political subdivision shall be presumed to have substantially relied upon the validity and effectiveness of the ordinance.

(3) An ordinance shall not be found void from inception unless the party alleging the defect in statutory procedure meets the burden of proving the elements set forth in subsection (e).

**(e) Burden of proof.**—Notwithstanding any other provision of law, *an ordinance shall not be found void from inception except as follows:*

(1) In the case of an appeal brought within the 30–day time limitation of subsection (b), the party alleging the defect must meet the burden of proving that there was a failure to strictly comply with statutory procedure.

(2) *In the case of an appeal which is exempt from the 30–day time limitation* in accordance with subsection (c), the party alleging the defect must meet the burden of proving each of the following:

(i) That there was a failure to strictly comply with statutory procedure.

(ii) *That there was a failure to substantially comply with statutory procedure which resulted in insufficient notification to the public of impending changes in or the existence of the ordinance, so that the public would be prevented from commenting on those changes and intervening, if necessary, or from having knowledge of the existence of the ordinance.*

(iii) *That there exist facts sufficient to rebut any presumption* that may exist pursuant to subsection (d)(2) that would, unless rebutted, result in a determination that the ordinance is not void from inception.

42 Pa.C.S. § 5571.1(b)-(e) (emphasis added).

Applying the provisions of Section 5571.1, the trial court observed that Challengers filed their challenge more than 12 years after enactment of the zoning ordinance and more than 30 days after the effective date of Section 5571.1. As a result, Challengers needed to satisfy the heightened burden of proof of Section 5571.1(e) to prevail.

Concerning the requirements of Section 5571.1(e)(2), the trial court stated that although the Township violated the MPC by failing to properly submit the final version of the zoning ordinance to the County Planning Commission, this defect did not result in "insufficient notification *to the public* ... so that *the public* would be prevented from commenting ... [on] the ordinance." Tr. Ct., Slip Op. at 14–15 (quoting 42 Pa.C.S. § 5571.1(e)(2)(ii)) (emphasis in original). Thus, the trial court determined Challengers did not meet their burden of satisfying Section 5571.1(e)(2)(ii).

In addition, the trial court determined that by failing to present any evidence, Challengers did not prove facts to rebut the presumption in Section 5571.1(d)(2) that the Township and its residents substantially relied on the validity and effectiveness of the zoning ordinance. The trial court noted evidence of such facts is required by the third prong of Section 5571.1(e)(2), and, in the absence of such evidence, it had to presume the Township and its residents substantially relied on the validity and effectiveness of the zoning ordinance. In view of this presumed substantial reliance, the trial court held that Challengers' procedural challenge was time-barred. The trial court noted any other conclusion would be manifestly unfair to the Township and its residents who relied on the validity of the zoning ordinance. *See Geryville Materials, Inc. v. L. Milford Twp. Zoning Hearing Bd.*, 972 A.2d 136 (Pa.Cmwlth.2009), *appeal denied*, —— Pa. ——, —— A.2d ——, 2010 WL 1486600 (No. 398 MAL 2009, filed April 14, 2010) (zoning and subdivision ordinances held valid despite procedural defects in order to avoid "potential chaos" in the community).

The trial court determined this Court's decision in *Geryville Materials* was instructive despite the fact that it was decided prior to the most recent amendment to the Judicial Code, 42 Pa.C.S. § 5571.1. The trial court stated that like *Geryville Materials*, the present case involved procedural challenges to numerous zoning and subdivision ordinances that had been on the township's books for a lengthy period, in some cases, 39 years. Despite procedural defects in the enactment process, this Court upheld the ordinances, refusing to apply the void *ab initio* doctrine based on the municipality's reliance on, or acquiescence in, the ordinances over a long period.

The trial court also rejected Challenger's assertion that they were exempt from

any time limitation on the ground they were denied due process, stating:

> In the present case, the only proven procedural defect was the township's failure to notify the Carbon County Planning Commission of the proposed amendment 45 days prior to the vote on the ordinance. As we noted above though, we do not know what the content or subject of this amendment was. We are unable to discern this information from the record submitted, and [Challengers] have not submitted any evidence despite our stated willingness to hold a hearing if they had wished to do so. It is quite possible that the amendment incorporated the changes proposed by Greg Solt in his letter of June 22, 1996. If so, these changes affected only the location of the boundary line between the village commercial and business commercial zoning districts on the property known as the Repscher subdivision. The quarry is not located in or adjacent to the Repscher subdivision. Nor is it located in either the business commercial or the village commercial zones in the township. In fact, the quarry is situated a substantial distance away in the rural and rural residential districts on the west side of the township. *[Challengers] have submitted no evidence from which we could conclude that their property is affected in any way by the amendment or that they have any interest in the amendment beyond a general interest attributable to any citizen in the township. Thus, [Challengers] are without standing to challenge the amendment procedure on due process grounds.*

Tr. Ct., Slip Op. at 21–22 (footnote omitted, emphasis added). For these reasons, the trial court denied Challengers' procedural validity challenge. This appeal by Challengers followed.

## II. Issues

On appeal, Challengers assert the trial court erred in improperly applying the provisions of Section 5571.1 of the Judicial Code and a due process analysis to their procedural challenge. They further contend the trial court erred in determining the Township complied with the MPC's mandatory requirements for adoption of the zoning ordinance. Challengers maintain the Township's failure to comply with these mandatory requirements implicated due process concerns and rendered the zoning ordinance void *ab initio*.

## III. Discussion

Pursuant to Section 5571.1(a)(2) of the Judicial Code and Section 1002–A(b) of the MPC, 53 P.S. § 11002–A(b), Challengers properly filed their procedural validity challenge with the trial court in the first instance. Thus, the trial reviewed the challenge *de novo*. Accordingly, we must review the trial court's findings and conclusions to determine whether the trial court committed an error of law or abused its discretion. *See, e.g., Larock v. Bd. of Supervisors*, 961 A.2d 916 (Pa.Cmwlth. 2008), *appeal denied*, 603 Pa. 686, 982 A.2d 1229 (2009).

### A. Contentions

Challengers begin by noting that municipalities have a constitutional obligation to provide the public with timely and sufficient notice of zoning ordinance enactments. Due process, they assert, demands no less.

Challengers contend this case involves a township's egregious failure to provide the public with notice of the provisions of that township's first zoning ordinance. They argue the Supreme Court's decision in *Glen–Gery* controls here. Challengers maintain the decision in *Glen–Gery* resolved several years of uncertainty with

regard to whether procedural challenges that are not filed within 30 days of the effective date of an ordinance are time-barred by either Section 909.1 of the MPC, 53 P.S. § 10909.1 or Section 5571 of the Judicial Code, 42 Pa.C.S. § 5571. They assert the Court in *Glen–Gery* expressly disregarded the General Assembly's 2002 addition of the term "intended" effective date to Section 5571(c)(5). Challengers argue the Court reasoned that improperly enacted ordinances are void from the beginning, and thus never become effective. Challengers contend in *Glen–Gery*, the Court held, notwithstanding the language of Section 5571, procedural challenges alleging defects in the process of adoption involving notice and implicating due process concerns are not time-barred.

Challengers assert the trial court here properly acknowledged the following principle of law:

> The process for enacting a zoning ordinance under the MPC is complex with specific rules concerning notice and procedure. Our appellate courts have stated that strict adherence to these rules is mandatory to protect the public interest.

Tr. Ct., Slip Op. at 6. Nevertheless, the language of Section 5571.1 as applied by the trial court to bar the procedural challenge must be disregarded for the same reasons the Supreme Court disregarded the language of Section 5571 in *Glen–Gery*. Challengers contend that by attempting to impose unreasonable and illogical burdens on a challenger and by imposing presumptions relating to procedural challenges, the General Assembly attempted an end-run around the Supreme Court's decision in *Glen–Gery* and the well-settled principle that an ordinance not enacted pursuant to mandatory procedural requirements is void *ab initio*, without regard to the identity of the challenger.

In this case, Challengers assert the Township did not strictly adhere to MPC requirements for enactment of the zoning ordinance. They maintain the procedural requirements the Township did not satisfy—including the failure to provide adequate notice of the provisions of the proposed zoning ordinance and the zoning map, revised on the very night of adoption—involve notice, implicate due process, and directly impact the property rights of landowners within the Township. *See Glen–Gery*. Challengers further assert neither the zoning map, nor a description of the location or content of the proposed zoning districts was published prior to adoption.

Challengers argue the public had *no* opportunity to "comment on the changes, intervene to stop them or to know of their existence." *Hawk v. Eldred Twp. Bd. of Supervisors*, 983 A.2d 216, 225 (Pa. Cmwlth.2009). This, they contend, represents a clear deprivation of constitutional rights. Challengers maintain this case is controlled by the reasoning of *Glen–Gery* and, as such, the zoning ordinance is void *ab initio*.

The Township responds the trial court here properly determined the provisions of Section 5571.1 of the Judicial Code apply to the facts presented. The Township notes Challengers filed their challenge after the effective date of this statutory provision, and pursuant to that provision, Challengers' procedural challenge is untimely.

The Township asserts pursuant to Section 5571.1(d), the zoning ordinance is presumed valid and enacted or adopted in compliance with statutory procedure. Since Challengers filed their challenge more than two years after the zoning ordinance's effective date, the Township argues, the Township's residents are presumed to have substantially relied on the

validity and effectiveness of the zoning ordinance. In fact, the Township asserts, the record reveals that even Challenger Lehigh Asphalt relied on the validity of the zoning ordinance in filing prior litigation.

The Township maintains in order for Challengers to effectively challenge the zoning ordinance because their challenge was filed more than two years after the zoning ordinance's effective date, Challengers had to satisfy the burden set forth in Section 5571.1(e). The Township argues Challengers did not present any evidence; rather, they chose to rely on the record filed by the Township setting forth the procedural history of the zoning ordinance and its subsequent amendments. Since Challengers did not rebut the statutory presumptions, the Township contends, the trial court properly upheld the validity of the zoning ordinance.

For their part, Intervenors contend Challengers' arguments center on whether the trial court erred in denying their procedural challenge based primarily on Challengers' claim that the void *ab initio* doctrine applies here. While Challengers assign numerous errors, Intervenors assert most of the alleged errors overlap in some respect. To that end, Intervenors argue this case can be simplified to two issues: (1) Whether Section 5571.1 of the Judicial Code applies to Challengers procedural validity challenge, and, (2) if so, whether Challengers met their burden as required by Section 5571.1 in order to sustain their appeal.

Intervenors argue the General Assembly enacted Section 5571.1 of the Judicial Code in direct response to the Supreme Court's holding in *Glen–Gery*. They assert Section 5571.1 clarified certain concerns raised in *Glen–Gery* and amplified the responsibility of parties attacking the procedural validity of zoning ordinances. Intervenors maintain the statute clearly applies here.

In fact, Intervenors note, in their brief to the trial court, Challengers acknowledged Section 5571.1 applied, yet they now present a question converse to that position: whether the trial court erred in applying Section 5571.1 to this challenge. Intervenors argue it is clear the trial court properly applied the provisions of Section 5571.1 here.

Intervenors further assert since Section 5571.1 applies here, Challengers were required to satisfy the requirements in Section 5571.1(e). Pursuant to that subsection, Intervenors argue, Challengers had to show: (a) the Township failed to strictly comply with statutory procedure; (b) this failure resulted in insufficient notice to the public so as to prevent the public from commenting on these changes and intervening accordingly; and, (c) there are facts sufficient to overcome the "substantial reliance referred to in § 5571.1(d)." Based on the trial court's ruling, Intervenors acknowledge the lack of "return" to the County Planning Commission evidenced a failure to strictly comply with statutory procedures. However, they argue that this failure did not affect the public's ability to comment or intervene. In addition, Intervenors assert Challengers did not present evidence to overcome the presumption in Section 5571.1(d). Because Challengers did not meet their burden of proof, Intervenors maintain, the void *ab initio* doctrine is inapplicable here.

### B. Analysis

#### 1. Void *Ab Initio* Doctrine

By way of background, in *Schadler*, the Supreme Court held that pre-enactment procedural defects that impacted public notification and comment would affect the validity of an ordinance so that it may not be effective, and the 30–day statutory period within which to raise a procedural challenge would not begin to run. Addressing

a zoning ordinance regulating mobile home parks which did not comply with pre-enactment notice procedures, the Supreme Court relied on two prior decisions.[6] The Court held that the ordinance was void *ab initio,* and the developers' curative amendment filed more than 30 days after the challenged enactment was not precluded.

The facts in *Schadler* occurred before the effective date of an amendment to Section 5571(c)(5) of the Judicial Code,[7] which required questions relating to alleged defects in the process of enactment to be raised within 30 days after the *intended* effective date of the ordinance. As a result, the Court did not decide whether the amendment changed the result.

Subsequently, the Commonwealth Court held that the amendment to the Judicial Code prevailed and that procedural validity challenges brought more than 30 days after an ordinance's *intended* effective date were untimely.[8] The Commonwealth Court decisions essentially deferred to the legislative intent embodied in the amendment which supported finality of municipal enactments.

This line of authority was abruptly changed with the Supreme Court's decision in *Glen–Gery.* In 2002, a brick maker wanted to conduct non-coal mining activities on its land; however, several ordinances passed years before restricted the desired activities. The brick maker challenged the ordinances. The local zoning hearing board, trial court and the Commonwealth Court applied the amendment to the Judicial Code and determined the challenges were untimely. The Supreme Court, however, reversed.

The Supreme Court majority held that a claim alleging a procedural defect affecting notice or due process rights in the enactment of an ordinance may be brought more than 30 days from the ordinance's intended effective date. The majority determined that where notice or other due process requirements for ordinance enactment are lacking, such an ordinance is void *ab initio* and therefore has no effective date. While the majority did not declare the Judicial Code amendment unconstitutional, it determined the amendment was ineffective in such a circumstance.[9]

Thereafter, the Supreme Court extended the void *ab initio* rationale beyond ordinances to land use decisions in *Luke.* In that case, neighboring landowners did not

6. *Cranberry Park Assocs. ex rel. Viola v. Cranberry Twp. Zoning Hearing Bd.,* 561 Pa. 456, 751 A.2d 165 (2000) (where statute indicated that recordation was required for adoption and that only upon adoption could an ordinance become effective, an unrecorded ordinance had no effective date and was void *ab initio* ); *L. Gwynedd Twp. v. Gwynedd Props., Inc.,* 527 Pa. 324, 591 A.2d 285 (1991) (rejecting "substantial compliance" argument in holding statutory publication requirements are mandatory and ordinances adopted without strict compliance are void).

7. 42 Pa.C.S. § 5571(c)(5). The amendment applied to a procedural challenge commenced after December 31, 2000. Section 6 of the Act of December 9, 2002, P.L. 1705. 42 Pa. C.S. § 5571(c)(5) was deleted by the Act of July 4, 2008, P.L. 325.

8. The Commonwealth Court decided *Taylor v. Harmony Township Board of Commissioners,* 851 A.2d 1020 (Pa.Cmwlth.), *appeal denied,* 581 Pa. 686, 863 A.2d 1151 (2004), and *Glen–Gery Corp. v. Zoning Hearing Board of Dover Township,* 856 A.2d 884 (Pa.Cmwlth.2004), *rev'd,* 589 Pa. 135, 907 A.2d 1033 (2006).

9. Mr. Justice Saylor authored a dissent in which he opined that the void *ab initio* doctrine did not apply, but that the Judicial Code amendment was unconstitutional as applied because the ordinances in question restricted the brick maker's use of its property without reasonable notice. *Glen–Gery,* 589 Pa. at 156–58, 907 A.2d at 1045–47.

appeal the 2002 grant of a conditional use permit which allowed coal mining operations. A year later, the neighboring landowners challenged the permits through a mandamus action in the trial court. The basis for mandamus relief was an alleged lack of notice and hearing by the governing body before the conditional use was approved. The trial court dismissed the mandamus action as beyond the 30–day appeal period for decisions. A much-troubled Commonwealth Court ultimately affirmed.

The Supreme Court, however, reversed, adopting the void *ab initio* rationale from *Glen–Gery*.[10] The Court determined that if there was a violation of neighboring landowners' due process rights because of a failure to give public notice or hold a public hearing, the governing body's action would be void *ab initio*, and no valid decision was made. Further, while most appeals under the MPC must be filed within 30 days after entry of a decision, where no valid decision is made, there is no date of entry from which the appeal period can commence.

It is useful to note that during the underlying proceedings in *Glen–Gery* and *Luke*, there was no litigation regarding compliance with the statutory requirements for notice and possible prejudice. In each case the procedural challenge was rejected as time-barred without a consideration of the merits. In both cases, the Supreme Court remanded for further proceedings. This is different from the procedures utilized here, where the trial court addressed the merits of the procedural challenge and offered a hearing on the issue.

### 2. 2008 Legislative Response

As to the most recent legislative action that followed the Supreme Court's application of the void *ab initio* doctrine in *Glen–Gery* and *Luke*, this Court, speaking through Judge Pellegrini in *Hawk*, recently observed:

> In 2008, after *Glen–Gery*, the General Assembly again responded by passing legislation placing time limits on procedural challenges to the adoption of ordinances. *See* 42 Pa.C.S. § 5571.1 .... This time, the General Assembly incorporated reservations to the unfettered use of the void *ab initio* doctrine contained in *dicta* in *Schadler* and *Glen–Gery*. Unlike its predecessors, Section 5571.1, which became effective July 4, 2008, employs a multi-tiered system in which the standards for challenging an ordinance vary depending on the amount of time that has passed since its adoption. Specifically:

> • Section 5571.1(b) provides that "[a]ny appeal raising questions relating to an alleged defect in statutory procedure shall be brought within 30–days of the intended effective date of the ordinance ... regardless of the ultimate validity of the challenged ordinance."

> • Section 5571.1(c) provides an exception to the 30 day time frame if the party bringing the appeal establishes that application of the 30 day limit would result in an impermissible deprivation of constitutional rights. In such a case, there is no limit restricting when a challenge to an ordinance may be brought.

> • In all cases, an ordinance is presumed valid and enacted in compliance with

---

**10.** The majority opinion in *Luke* was written by Mr. Justice Saylor. He embraced the void *ab initio* rationale over the as-applied constitutional challenge approach he advocated in his dissent in *Glen–Gery*. He appreciated the broad approach to the logic of the void *ab initio* doctrine, and he favored consistency of rationale. *Luke,* 593 Pa. at 479, 932 A.2d at 56, n. 7.

statutory procedures. Section 5571.1(d)(1).

- If the challenge is filed more than two years after the intended effective date of the ordinance, there is an additional presumption that the political subdivision involved and its residents have substantially relied upon the validity and effectiveness of the ordinance. § 5571.1(d)(2).
- If the appeal was brought within the initial 30 day time limitation, the party alleging defective procedures must only prove a failure to "strictly comply" with statutory procedures. § 5571.1(e)(1).
- After 30 days, the challenging party must also prove that the failure to strictly comply with statutory procedures resulted in insufficient notice to the public of impending changes to the ordinance or to its existence, so that the public would be prevented from commenting upon the changes, intervening, or having knowledge of the ordinance's existence. § 5571.1(e)(2).
- If two years have passed since the ordinance's intended effective date, the challenging party must establish facts sufficient to rebut the presumption of reliance on the ordinance in Subsection (d)(2). § 5571.1(e)(3).

In combination with the changes in Section 5571.1, the General Assembly also passed Section 1002–A(b) of the MPC providing procedural challenges to the validity of a land use ordinance shall be brought directly in the court of common pleas rather than first bringing them to the zoning hearing boards. *Hawk*, 983 A.2d at 221–22.

### 3. Application of Section 5571.1 of the Judicial Code in Hawk

A detailed discussion of our decision in *Hawk*, which was decided after the trial court's decision here, and which is the first decision that directly addresses Section

5571.1 of the Judicial Code, is helpful. There, a landowner built a race track in a commercial zoning district in the township. The township zoning officer subsequently issued the landowner an enforcement notice for operating a race track without a zoning permit. After several unsuccessful attempts to gain approval for the track, the landowner filed a procedural challenge with the trial court seeking to invalidate the local zoning ordinance. The landowner asserted, and the local governing body did not dispute, the procedures employed in adopting the ordinance did not strictly comply with MPC requirements. The defects included: failure to submit the proposed ordinance to the county planning commission; revision of the draft ordinance without submission to the county or township planning commissions; failure to advertise a summary of amendments at least 10 days prior to enactment of the ordinance; failure to file an attested copy of the ordinance with the county law library, other county offices, or a newspaper of general circulation; failure to hold a public meeting with the township planning commission; and, failure to provide a copy of the ordinance to the county planning commission within 30 days of its enactment. Because these statutory procedures were not followed, the landowner argued the ordinance was void *ab initio*. A panel of this Court disagreed.

First, we stated the landowner did not mount a procedural validity challenge to the local zoning ordinance in his initial appeal from the enforcement notice. Therefore, we held the issue was waived. Despite our determination of waiver, in *dicta* we rejected the landowner's contentions on the merits.

Specifically, we determined the landowner's procedural challenge was time-barred because it was filed more than 30 days after enactment of the ordinance, and the

landowner did not prove he was deprived notice of the enactment of the ordinance. We stated the record revealed the public was repeatedly informed of every meeting concerning the creation and enactment of the local zoning ordinance in a newspaper of general circulation.

In addition, we determined, even if the landowner was deprived of his constitutional rights, he did not satisfy his burdens under Section 5571.1. To that end, we noted, because four years passed between enactment of the ordinance and the landowner's challenge, he needed to rebut the presumption of substantial reliance on the ordinance by the township and its residents. However, the landowner presented no evidence to rebut this presumption. Also, the landowner did not meet his burden of proving the township's failure to strictly comply with statutory procedures resulted in insufficient notice to the public such that the public could not comment on the changes, intervene to stop them, or to know of their existence.

As a final point, we rejected the landowner's assertion that Section 5571.1 unconstitutionally restricted his ability to contest the ordinance as void *ab initio*. Like Challengers here, the landowner maintained *Glen–Gery* categorically proscribed time limits in challenges to ordinances as void *ab initio* on the ground that if an ordinance is void *ab initio*, there is no date from which to measure the 30 days. Rejecting this assertion, we explained, in part:

Synthesizing the concerns expressed in *Schadler* and *Glen–Gery* over the possible excesses of the void *ab initio* doctrine, this Court has recently held in [*Geryville Materials*, 972 A.2d at 142–43]:

In considering the language from *Schadler* and the Supreme Court's reference thereto in *Glen–Gery* we under-

stand that our Supreme Court had certain concerns about the application of the void ab initio doctrine, including that: (1) an overly aggressive application of the doctrine could result in excessive uncertainty; (2) the purpose of compliance with procedure is to ensure that the public will be able to make comments regarding proposed change; and (3) where a presumption may be made that persons interested in the operation of an ordinance have acquiesced to the substance of the ordinance and, despite procedural infirmities, the ordinance has been accepted by property owners and applied by a municipality for a sufficiently long period of time, the application of the doctrine may not be appropriate.

\* \* \*

In order to reach a presumption that acquiescence has occurred, the Supreme Court indicated, in dicta in *Glen–Gery* that the lapse of time of some indefinite amount, coupled with some indication that persons interested in land use in a municipality have obeyed the ordinances purported to have been enacted, would suffice to support a decision electing not to apply the void ab initio doctrine despite evidence of defects in the enactment process.

Because it does not ever bar challenges to ordinances as void *ab initio* so long as the challenger has suffered a deprivation of constitutional rights, Section 5571.1 is free of the defects that plagued its predecessors. It specifically incorporates the concerns about unfettered application of the void *ab initio* doctrine voiced in *Schadler* and *Glen–Gery* and summed up in *Geryville Materials*. First, a challenge that an ordinance is void *ab initio* because of defective procedures in enacting it can never be time barred if doing so would cause

the challenger to suffer a deprivation of constitutional rights. Section 5571.1(c). This eliminates the most glaring defect of Section 5571(c)(5), as any landowner who suffers a deprivation of due process from a lack of notice during the period of enactment can challenge the ordinance at a later date. At the same time, the increased hurdles to challenges after 30 days and two years beyond the intended effective date of the ordinance, the burden on the challenging party to show lack of notice of the enactment or change to the ordinance, and the presumption of reliance on the validity of the ordinance after two years each reduces the municipality's and its landowners uncertainty about whether their land use ordinances are valid. All this is in accordance with the parameters set in *Schadler* and *Glen–Gery*. Consequently, [the landowner's] challenge to the constitutionality of Section 5571.1 fails. *Hawk,* 983 A.2d at 226–27.

### 4. Procedural Due Process

Another important recent decision regarding the void *ab initio* doctrine and procedural due process is *In re McGlynn,* 974 A.2d 525 (Pa.Cmwlth.2009). In that case, an applicant filed a conditional use application seeking to build a mobile/manufactured home park. Public notice of the first hearing on the application appeared in the local newspaper of general circulation in the township twice, but the publications occurred four days apart rather than five days apart as required by Section 908(1) of the MPC, 53 P.S. § 10908(1). Nevertheless, the local governing body conducted the hearing as scheduled, and the applicant and the objectors appeared and presented evidence. The local governing body held two subsequent hearings, after which it issued a decision granting the application. On appeal by the objectors, the common pleas court remanded to the governing body, which held three additional hearings during which the objectors actively participated. The local governing body then issued a remand decision confirming its initial decision granting the application.

On the objectors' second appeal, the trial court affirmed. Unlike the procedures in *Glen–Gery* and *Luke,* the trial court specifically addressed the alleged failure to strictly follow the statutory publication requirements.

Before this Court on further appeal, the objectors also raised the local governing body's failure to strictly follow the statutory publication requirements. The objectors relied on the void *ab initio* doctrine.

This Court rejected the objectors' assertions, holding the objectors received all process due and asserted no claim of prejudice or harm resulting from the defect in publication. Our analysis focused on the U.S. Supreme Court's seminal decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which set the standard for a procedural due process review. Applying *Mathews,* we determined that while the objectors had an interest in the quiet use and enjoyment of their properties near the proposed use, as well as a right to participate in the governing body's hearings, the objectors were not deprived of these interests. Specifically, the objectors had actual notice of the governing body's first hearing, which they claimed the governing body defectively advertised, and the objectors actively participated in that hearing.

Further, we stated that the proceedings at issue did not risk erroneous deprivation of the objectors' interests. More particularly, we determined objectors' interests were fully protected because the objectors participated with counsel in unrestricted remand hearings, and this cured any defi-

ciency in notice of the original set of hearings.

Also, concerning the municipality's interests, we noted that the municipality would suffer financial and administrative burdens by having to cure the defective notice of the first hearing and conceivably start anew on the entire application process. Most importantly, we indicated the objectors did not assert or prove any discernible harm resulting from the defective publication. For these reasons, we rejected the objectors' claim that they were denied procedural due process.

### 5. Analysis

### A. Procedural Due Process/Application of *McGlynn*

■ The ordinance enactment provisions in question implicate procedural due process. The concept of due process, however, is a flexible one and imposes only such procedural safeguards as the situation warrants. *LaFarge Corp. v. Ins. Dep't*, 557 Pa. 544, 735 A.2d 74 (1999); *Fountain Capital Fund, Inc. v. Pa. Secs. Comm'n*, 948 A.2d 208 (Pa.Cmwlth.2008), *appeal denied*, 600 Pa. 765, 967 A.2d 961 (2009). Demonstrable prejudice is a key factor in assessing whether procedural due process was denied. *State Dental Council & Examining Bd. v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974).

Involved here are statutory provisions for specific public notice steps to be undertaken when enacting zoning ordinances. In timely appeals, our Supreme Court concludes that those steps must be strictly followed to protect the public interest. *E.g., L. Gwynedd Twp.*

Other statutory provisions describe presumptions and burdens when a challenge is raised to the enactment process. Where a procedural validity challenge is raised within 30 days of the intended effective date of an ordinance, a challenger need only prove that statutory enactment procedures were not strictly followed. 42 Pa. C.S. § 5571.1(e)(1). In essence, prejudice is presumed. However, a procedural challenge brought after the 30 day period must be supported by some proof of prejudice. 42 Pa.C.S. §§ 5571.1(c) (exemption from 30 day limitation where challenger establishes that defect in statutory procedure would result in an impermissible deprivation of constitutional rights); 5571.1(e)(2) (where exempt from 30 day limitation, challenger must prove lack of substantial compliance and insufficient notification to public impeding comment and participation). A procedural challenge filed more than two years after the intended effective date of an ordinance must also be accompanied by proof sufficient to overcome presumed public reliance on the ordinance. 42 Pa. C.S. §§ 5571.1(d)(2) (presumptions); 5571.1(e)(2)(iii) (burden of proof).

■ We discern no inconsistency between Section 5571.1 of the Judicial Code and the common law rule of strict compliance with statutory public notice requirements for enactment of ordinances, for two reasons. First, a party raising a procedural due process challenge usually must prove prejudice to its private interest. *State Dental Council.* The General Assembly's decision to dispense with proof of prejudice to a private right in cases of prompt appeals (within 30 days of intended effective date) does not aggrieve that party. After the period for a prompt appeal, the general rule of proof of prejudice to a private right prevails.

■ Second, as to the public's interest in participation, the General Assembly is empowered to define the process due to the public, as long as, in so doing, it does not deprive the public of its fundamental rights. *Cf. Petition of Kariher*, 284 Pa.

455, 470, 131 A. 265, 270 (1925) ("[T]here must be notice, an opportunity to present one's cause, a proceeding appropriate to the character of the particular case, and an adjudication of the same nature as is present in other cases. Where these things are present there is due process of law.... *The Fourteenth Amendment to the federal Constitution does not undertake to control the power of the state to determine by what process legal rights may be asserted* or legal obligations enforced, or what form procedure and practice shall take, *so long as the above elements are present.*") (Emphasis added.) (citing *Louisville & Nashville R.R. Co. v. Schmidt*, 177 U.S. 230, 236, 20 S.Ct. 620, 44 L.Ed. 747 (1900); *Iowa Cent. Ry. Co. v. Iowa*, 160 U.S. 389, 393, 16 S.Ct. 344, 40 L.Ed. 467 (1896)). The General Assembly's decision to require strict compliance with procedures to protect the public interest where the issues are promptly raised is consistent with case law. *L. Gwynedd Twp.* It is within the authority of the General Assembly to require proof of prejudice to the public interest after the passage of the period for prompt appeals, thereby balancing the public interest in participation with the public interest in finality. Cases decided before the General Assembly's current expression of the process due the public interest do not control.

■ With these considerations in mind, we undertake a *Mathews* analysis. At the outset, we acknowledge Challengers have a private interest in the use and enjoyment of their property, subject to reasonable zoning restrictions, as well as a shared public interest right to participate in the proceedings involving adoption of the zoning ordinance. However, we discern no due process violation regarding either Challengers' private right or the public interest.

Regarding the public's interest in participation, the record reveals more than 20 Township and Planning Commission meetings regarding the proposed zoning ordinance prior to its adoption in late–July 1996. R.R. at 115a (minutes of Township zoning ordinance workshop meeting of 6/18/96); 118a–19a (minutes of Township Planning Commission meeting of 6/17/96); 163a–66a (minutes of Township Supervisors' meeting of 4/1/96); 167a–69a (minutes of Township Supervisors' zoning ordinance hearing of 4/22/96); 170a–73a (minutes of Township Supervisors' meeting of 5/6/96); 174a (minutes of Township zoning ordinance workshop of 5/21/96); 176a (minutes of Township Supervisors' meeting of 7/1/96); 183a (minutes of Township Planning Commission meeting of 11/20/95); 184a (minutes of Township Planning Commission meeting of 5/15/95); 185a (minutes of Township Planning Commission meeting of 1/16/96); 186a (minutes of Township Planning Commission of 2/19/96); 189a–93a (minutes of Township Planning Commission of 9/13/94); 194a–95a (minutes of Township Planning Commission of 11/16/94); 196a (minutes of Township Planning Commission of 1/24/95); 197a (minutes of Township Planning Commission of 2/21/95); 198a (minutes of Township Planning Commission meeting of 3/21/95); 199a (minutes of Township Planning Commission meeting of 4/18/95); 200a (minutes of Township Planning Commission meeting of 5/16/95); 201 a–02a (minutes of Township Planning Commission meeting of 6/20/95); 203a (minutes of Township Planning Commission meeting of 7/16/95); 204a (minutes of Township Planning Commission meeting of 8/22/95); 205a (minutes of Township Planning Commission meeting of 9/19/95); 208a (minutes of Township Planning Commission meeting of 1/22/96).

In addition, the record contains several proofs of publication of Township meetings on the proposed zoning ordinance, including notice of the Township's April 22, 1996 meeting, published in The Times Newspaper on April 8 and 15, 1996, R.R. at 180a, as well as public notice of a Township workshop on the proposed zoning ordinance on May 21, 1996, published in The Times Newspaper on May 15, 1996. R.R. at 182a. Finally, and most importantly, the record contains proof of publication of the Township's July 22, 1996 hearing on the proposed zoning ordinance, published in The Times News on July 5 and 12, 1996. R.R. at 181. That notice informed the public that the Township would consider enactment of the proposed zoning ordinance after the public hearing. *Id.* That notice also indicated copies of the zoning ordinance could be reviewed at the Township municipal building or the Carbon County Law Library. *Id.*

Also, with regard to Challengers' private rights, review of the meeting minutes reveals Challengers Charles or Agnes Messina were present for seven of the Township meetings regarding the proposed zoning ordinance, including meetings in November 1994, March 1995, and January, February, May and June 1996, prior to adoption of the zoning ordinance in July 1996. R.R. at 118a, 185a, 186a, 187a, 194a, 198a, 208a. Further, by letter dated February 5, 1996, then-counsel for Lehigh Asphalt indicated she was informed that the Township was considering adoption of a zoning ordinance that would have the effect of prohibiting quarrying, mining or mineral extraction use in areas where Lehigh Asphalt owned or leased property. R.R. at 218a. The letter voiced concerns over the potential effect of the zoning ordinance on Lehigh Asphalt's continued quarrying and/or mining operations in the Township. *Id.* The Township's solicitor read Lehigh Asphalt's "letter[ ] of concern" at the April

22, 1996 Township hearing on the zoning ordinance, three months prior to the Township's adoption of the zoning ordinance. R.R. at 167a.

Thus, the record reveals Challengers had actual notice that the Township was planning to adopt the proposed zoning ordinance. In *McGlynn*, we held the objectors' actual notice of the proceedings relating to the zoning application at issue was crucial to a *Mathews* evaluation. Moreover, with regard to Challengers' claimed lack of notice of the zoning ordinance or any amendment made on the night of adoption, the trial court offered Challengers an opportunity for a hearing on their procedural validity challenge, which Challengers declined.

Further, we perceive no risk of erroneous deprivation of protected interests through the procedures employed here. As indicated above, the record reveals the Township conducted numerous public meetings on the proposed zoning ordinance, for nearly two years prior to adoption of the zoning ordinance. Several of the meetings occurred after the Township provided formal public notice of the meetings in a newspaper of general circulation in the county. These meetings, several of which Challengers attended or commented upon, sufficiently protected Challengers' interests and the public interest. Challengers declined the opportunity to prove either their property interests or the public interest in participation was prejudiced. *Cf. Pa. Bankers Ass'n v. Dep't of Banking,* 981 A.2d 975 (Pa.Cmwlth.2009) (undertaking *Mathews* analysis of procedural due process issue, complaining party declined opportunity to prove prejudice and did not establish risk of erroneous deprivation of protected right). This significant difference distinguishes the present case from *Glen–Gery* and *Luke.*

In summary, despite the offer of a hearing by the trial court, Challengers chose not to present evidence of prejudice. Challengers' interests were protected by virtue of the fact that they were aware of and participated in several of the meetings and hearings preceding adoption of the zoning ordinance. The public interest in participation, as balanced against the public interest in finality, was protected by the lengthy process detailed above. Given the passage of time after the original adoption of the zoning ordinance and the absence of proof of discernible harm, no denial of due process is evident. *McGlynn.*

### B. Alleged Defects

### 1. Failure to Re-advertise "Substantial" Amendment to Zoning Ordinance (MPC § 610(b))

Challengers assert they were deprived notice of certain "substantial" changes to the zoning ordinance made shortly before its adoption. Challengers assert the trial court erred in determining the changes made to the zoning ordinance on the night of its adoption were not "substantial." Specifically, they assert the minutes of the public hearing and meeting at which the zoning ordinance was considered and ultimately adopted describe the scope of the substantial amendments made to the zoning map. Challengers argue the minutes reflect Township resident Greg Solt "highlighted a letter he submitted to the Board," and changes were made to the zoning map pursuant to Solt's suggestion. Appellant's Br. at 27. Challengers maintain the letter to which the minutes refer, and on which the changes to the zoning map were based, explained the lack of clarity of the zoning map provided to the public, and further described with particularity the changes requested. To that end, they assert the requested changes involved the moving of the boundary line between the "Business Commercial" and the "Village Commercial" zoning districts from the east side to the west side of the Repsher subdivision in the Township. As such, Challengers contend the record in fact makes clear the nature of the changes made to the zoning map and the substantial nature of those changes.

■ Rejecting this claim, the trial court explained (with emphasis added):

> Section 610(b) of the MPC is specific that when
>
>> substantial amendments are made in the proposed ordinance or amendment, before voting upon enactment, the governing body shall, at least 10 days prior to enactment, re-advertise, in one newspaper of general circulation in the municipality, a brief summary setting forth all the provisions in reasonable detail together with a summary of the amendments.
>
> 53 P.S. § 10610(b).
>
> It appears from the record that the proposed ordinance was amended on the night of its enactment, July 22, 1996, without re-advertisement before it was voted on and adopted. However, not every amendment requires re-advertisement. Under section 610(b), re-advertisement is necessary only if the amendment was "substantial." In *Schultz v. City of Philadelphia*, 385 Pa. 79, 82, 122 A.2d 279, 281 (1956), in discussing the issue of substantiality our Supreme Court stated:
>
>> While it is obvious that an insignificant amendment made to a proposed ordinance after advertisement and a public hearing does not require a re-advertisement and public hearing, the case is clearly otherwise if the amendment is substantial in relation to the legislation as a whole.

The Supreme Court expounded on this principle in *Appeal of Hawcrest Association*, 399 Pa. 84, 87, 160 A.2d 240, 242 (1960), holding that for substantiality to exist "there must be a significant disruption in the continuity of the proposed legislation or some appreciable change in the overall policy of the bill." In *Hawcrest*, the court found that the amendment "did not add or delete any permitted use; it did not change a district boundary or classification, nor did it vary any regulation." *Id.* Therefore, the Court found that the amendment was insubstantial, and refused to invalidate the zoning ordinance at issue, even though it had not been re-advertised following the amendment. The Commonwealth Court reached a different conclusion on substantiality in *Save Our Local Environment II v. Foster Township Board of Supervisors*, 137 Pa. Cmwlth. 505, 508–09, 587 A.2d 30, 31–32 (1991), holding that modification of a zoning district from agricultural to industrial amounts to a substantial change when applied to 3,300 acres.

*In the instant case it is not clear from the record before us exactly what the amendment was. Therefore, we are unable to find that it was substantial. [Challengers] who had the burden of proof on this issue, failed to prove facts sufficient to establish its claim of a substantial amendment.* The amendment may have consisted of the change suggested by Greg Solt in his letter of June 22, 1996, *i.e.*, the movement of the dividing line between the business commercial and village commercial districts on the property known as the Repscher subdivision. If so, this may have been a substantial change under the test established by our Supreme Court in *Hawcrest.* However, the change adopted at the July 22, 1996 meeting might have been something else. We cannot decide

an important case such as this—or any case for that matter—on the basis of guesswork. *In the absence of any evidence as to the specific content of the amendment, we are unable to find that it was "substantial". Hence, we cannot find that the failure to re-advertise was a fatal flaw in the enactment process.* Tr. Ct., Slip Op. at 7–9. We discern no error in the trial court's analysis. In particular, despite the fact the trial court offered to hold a hearing on Challengers' procedural challenge that would have enabled Challengers to present evidence to support their claim that the change to the zoning ordinance was substantial, Challengers declined this opportunity. In the absence of any proof by Challengers, who bore the burden of showing the zoning ordinance's invalidity, *see, e.g., Cranberry Park Associates*, we cannot agree with Challengers that the trial court erred in determining it was unable to discern whether the change made to the zoning map and/or ordinance was substantial.

### 2. Sufficiency of Public Notice of Proposed Zoning Ordinance (MPC § 610(a))

■ Challengers also take issue with the trial court's determination that the public notice of the proposed zoning ordinance, published in The Times Leader newspaper, included a sufficient "brief summary" of the zoning ordinance as required by Section 610(a) of the MPC. Section 610(a) states:

(a) Proposed zoning ordinances and amendments shall not be enacted unless notice of proposed enactment is given in the manner set forth in this section, and shall include the time and place of the meeting at which passage will be considered, a reference to a place within the municipality where copies of the proposed ordinance or amendment may be

examined without charge or obtained for a charge not greater than the cost thereof. The governing body shall publish the proposed ordinance or amendment once in one newspaper of general circulation in the municipality not more than 60 days nor less than 7 days prior to passage. Publication of the proposed ordinance or amendment shall include *either* the full text thereof or *the title and a brief summary,* prepared by the municipal solicitor *and setting forth all the provisions in reasonable detail.* If the full text is not included:

(1) A copy thereof shall be supplied to a newspaper of general circulation in the municipality at the time the public notice is published.

(2) An attested copy of the proposed ordinance shall be filed in the county law library or other county office designated by the county commissioners, who may impose a fee no greater than that necessary to cover the actual costs of storing said ordinances.

53 P.S. § 10610(a) (emphasis added). The purpose served by statutory notice and publication requirements is to ensure the public's right to participate in the consideration and enactment of municipal ordinances. *L. Gwynedd.*

█ With regard to this alleged defect, the trial court stated: "Obviously publication of the entire 91–page Ordinance would have been ridiculous. We believe that the summary published was sufficient and did meet the requirements of the MPC." Tr. Ct., Slip Op. at 7. We discern no error in the trial court's determination.

More specifically, our review of the record reveals the Township twice published notice of the public hearing on the proposed zoning ordinance in the Times News, a newspaper of general circulation in Carbon County. R.R. at 113a. This notice included the date and time on which the Supervisors would consider enactment of the zoning ordinance as well as the title of and a brief description of each of the 12 articles that comprise the zoning ordinance. R.R. at 113a. The public notice also included a statement that copies of the proposed zoning ordinance could be reviewed at The Times News Building, the Township Municipal Building or the County Law Library. *Id.* We agree with the trial court that this notice was sufficient to satisfy Section 610(a). *See, e.g., Allegheny Energy Supply Co. v. Twp. of Blaine,* 829 A.2d 1254 (Pa.Cmwlth.2003) (where township published notice of summary of proposed ordinance amendment that included the title and a description of amendment, along with a statement regarding where the full text of amendment could be found, this was sufficient to satisfy Section 610 of the MPC).[11]

Further, this is not a case like *Valianatos v. Zoning Hearing Board of Richmond Township,* 766 A.2d 903 (Pa.Cmwlth.2001), relied on by Challengers. There, this Court declared certain ordinance amendments invalid because the published notice merely conveyed the township's intent to "consider proposed amendments" and not to "enact" those amendments. Here, unlike in *Valianatos,* the notice at issue specifically indicated the Supervisors would "consider *enactment*" of the proposed zoning ordinance at its July 22, 1996 meeting.

---

**11.** As noted above, the trial court determined the Township did fail to strictly comply with Section 607(e) of the MPC by failing to submit the final version of the zoning ordinance, including all amendments, to the County Planning Commission at least 45 days prior to enactment. In their brief to this Court, Challengers do not explain how the trial court's concomitant finding that this defect does not implicate notice or due process is in error. Therefore, we do not address this alleged defect further.

This language is sufficient to distinguish the notice from the notice found to be deficient in *Valianatos*.

## C. Application of Section 5571.1 of the Judicial Code

Further, even if Challengers proved they were deprived notice of the proposed zoning ordinance or any amendment to the zoning ordinance on the night of its adoption, and we assume this amendment was "substantial," Challengers could not prevail on their procedural validity challenge. In essence, we reject Challengers' claim that Section 5571.1 of the Judicial Code is inapplicable here. Specifically, Section 5571.1 went into effect July 4, 2008, and Challengers filed their procedural validity challenge more than 30 days later on August 11, 2008. Therefore, the trial court correctly determined Challengers' challenge is governed by Section 5571.1. *See Hawk*.

Further, as in *Hawk*, Challengers did not satisfy their burdens under Section 5571.1(e)(2) of the Judicial Code. As 12 years passed between enactment of the zoning ordinance and Challenger's procedural challenge, they needed to rebut the presumption in Section 5571.1(d)(2) of substantial reliance on the validity and effectiveness of the zoning ordinance by the Township and its landowners. Like the challenger in *Hawk*, however, Challengers here presented no evidence to rebut this presumption. Further, as recognized by the trial court, our research reveals that Lehigh Asphalt previously relied on the effectiveness of the zoning ordinance *in May 2000* when it filed a special exception application seeking to increase its quarry operation. *See Lehigh Asphalt Paving & Constr. Co. v. Bd. of Supervisors of E. Penn Twp.*, 830 A.2d 1063 (Pa.Cmwlth. 2003).

In addition, to the extent Challengers claim that Section 5571.1 unconstitutionally restricts their ability to contest the zoning ordinance as void *ab initio*, we rejected that claim in *Hawk*, observing that, in enacting Section 5571.1, the General Assembly adequately considered and "incorporate[d] the concerns about unfettered application of the void *ab initio* doctrine voiced in *Schadler* and *Glen–Gery* and summed up in *Geryville Materials*." *Hawk*, 983 A.2d at 226. While Challengers assert Section 5571.1's creation of a statutory presumption of reliance is inappropriate because the concept of "reliance" is inapplicable to zoning, we note, in *dicta* in *Glen–Gery* and *Schadler*, the Supreme Court specifically voiced concern over an overly aggressive use of the void *ab initio* doctrine where, among other things, the law sought to be voided caused reliance. *Hawk*. The reasoning employed in our panel decision in *Hawk* regarding the constitutionality of Section 5571.1 applies with equal force here, and we see no reason to alter course on this issue.

For all of the foregoing reasons, we affirm the order of the trial court.

### *ORDER*

**AND NOW,** this 26th day of May, 2010, the order of the Court of Common Pleas of Carbon County is **AFFIRMED.**