IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County Sportsmen's      :
League,                            :
                 Appellant        :
                                  :
                                  :
         v.                       :
                                  :   No. 1810 C.D. 2019
City of Pittsburgh                :   Argued:  February 7, 2023


BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED:  March 3, 2023


         The Allegheny County Sportsmen's League (League) appeals from a
November 19, 2019 order of the Court of Common Pleas of Allegheny County (trial
court) that dismissed, as moot, the League's contempt petition against the City of
Pittsburgh (City).  Upon review, we affirm the dismissal of the contempt petition,
albeit on different grounds.


**I. Background**

         In January 1994, the League filed a civil action against the City in the
trial court, contending that a recently enacted firearms ordinance was preempted by

Article I, Section 21 of the Pennsylvania Constitution[1] and Section 6120 of the Pennsylvania Uniform Firearms Act of 1995 (Uniform Firearms Act),[2] 18 Pa.C.S. § 6120.[3] *Allegheny Cnty. Sportsmen's League v. City of Pittsburgh* (C.C.P. Alleghny

---

[1] "The right of the citizens to bear arms in defense of themselves and the State shall not be questioned." PA. CONST. art. I, § 21.

[2] 18 Pa.C.S. §§ 6101-6128.

[3] **§ 6120. Limitation on the regulation of firearms and ammunition.**

> **(a)** *General rule.* — No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

> **(a.1)** *No right of action.*

>> **(1)** No political subdivision may bring or maintain an action at law or in equity against any firearms or ammunition manufacturer, trade association or dealer for damages, abatement, injunctive relief or any other relief or remedy resulting from or relating to either the lawful design or manufacture of firearms or ammunition or the lawful marketing or sale of firearms or ammunition to the public.

>> **(2)** Nothing in this subsection shall be construed to prohibit a political subdivision from bringing or maintaining an action against a firearms or ammunition manufacturer or dealer for breach of contract or warranty as to firearms or ammunition purchased by the political subdivision.

> **(a.2)** *Relief.* — [Declared unconstitutional by *Leach v. Commonwealth*, 141 A.3d 426 . . . (Pa. 2016)]

> [As enacted, this provision stated:

>> A person adversely affected by an ordinance, a resolution, regulation, rule, practice or any other action promulgated or enforced by a county, municipality or township prohibited under subsection (a) or 53 Pa.C.S. Section 2962(g) (relating to limitation on municipal powers) may

Cnty. No. 94-001499, filed Dec. 19, 2019) (Trial Ct. Dec.), slip op. at 1. In February 1995, the parties entered into a Settlement Agreement in the form of a Stipulation that was confirmed by the trial court. *Id.*, slip op. at 1-2. The Settlement Agreement provided:

seek declaratory or injunctive relief and actual damages in an appropriate court.]

**(a.3)** *Reasonable expenses.* — [Declared unconstitutional by *Leach v. Commonwealth*, 141 A.3d 426 . . . (Pa. 2016)]

[As enacted, this provision stated:

A court shall award reasonable expenses to a person adversely affected in an action under subsection (a.2) for any of the following:

(1) A final determination by the court is granted in favor of the person adversely affected.

(2) The regulation in question is rescinded, repealed or otherwise abrogated after suit has been filed under subsection (a.2) but before the final determination by the court.]

**(b)** *Definitions.* —

As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

*"Dealer."* —The term shall include any person engaged in the business of selling at wholesale or retail a firearm or ammunition.

*"Firearms."* —This term shall have the meaning given to it in section 5515 (relating to prohibiting of paramilitary training) but shall not include air rifles as that term is defined in section 6304 (relating to sale and use of air rifles).

*"Political subdivision."* —The term shall include any home rule charter municipality, county, city, borough, incorporated town, township or school district.

18 Pa.C.S. § 6120.

WHEREAS: The [p]laintiffs sought to enjoin enforcement of Ordinance Number 30 of 1993 because it was alleged to have been preempted by state law; and,

WHEREAS: House Bill 185 was passed by both houses of the Legislature and enacted on October 4, 1994, over the Governor's Veto, as Act 85 of 1994; and,

WHEREAS: Section 6120 of Act 85 of 1994 reiterates, reaffirms, and codifies the state preemption of local ordinances and local action regarding firearms generally; and,

WHEREAS: All parties to this case are interested in compliance with Pennsylvania law;

THEREFORE: the plaintiffs and defendant to this court case do stipulate and agree as set forth above and as follows:

1. The plaintiffs discontinue and withdraw the complaint which is the subject of this litigation;

2. *The parties agree to abide by and adhere to Pennsylvania law.*

*Id.*, slip op. at 2 (emphasis added).

Nearly a quarter-century later, in April 2019, the City enacted three ordinances, Numbers 2018-1218, 2018-1219, and 2018-1220 (2019 Ordinances), seeking to regulate the use of certain firearms and related accessories in the City. Trial Ct. Dec., slip op. at 2. As a result, the League filed a petition to enforce the 1995 Settlement Agreement through a contempt order. The League asserted that by enacting the 2019 Ordinances, which the League argued were not authorized by law, the City failed to abide by and adhere to Pennsylvania law as required by the Settlement Agreement. Reproduced Record (RR) at 22a-25a.

4

In October 2019, the trial court issued an opinion and order in a separate action, holding that the 2019 Ordinances were preempted by state legislation and were void and unenforceable.[4] Trial Ct. Dec., slip op. at 3. As the City had delayed enforcing the 2019 Ordinances pending the outcome of cases challenging their validity, the trial court concluded the League's petition for contempt was moot in light of the October 2019 opinion and order. *Id.* Accordingly, the trial court dismissed the League's petition for contempt. *Id.* The League appealed the dismissal to this Court.

## II. Issues on Appeal

On appeal, the League asserts that the trial court abused its discretion, committed an error of law, or violated the League's constitutional rights[5] by dismissing the contempt petition as moot. The League avers that during a status conference held in chambers, the trial court stated it would not deem the League's

---

[4] The trial court's opinion does not identify the action in which it held the ordinances to be preempted.

[5] Our review of a trial court's contempt order is limited to determining whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Lubisky*, 88 A.3d 328, 332 n.5 (Pa. Cmwlth. 2014) (citing *Twp. of Lycoming v. Shannon*, 780 A.2d 835, 838 n.1 (Pa. Cmwlth. 2001)). We reject the League's suggestion that consideration of an appellant's constitutional rights as a part of the scope or standard of review regarding a contempt order is "consistent with the Pennsylvania Supreme Court's holding in *Leon E. Wintermyer, Inc. v.* [*Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 493 (Pa.] 2002)" (Newman, J., concurring). League Br. at 2 n.1. First, as noted, the cited portion of *Leon E. Wintermyer*, a workers' compensation appeal, was part of Justice Newman's *concurring opinion*; therefore, the League's description of it as our Supreme Court's "holding" in the case is incorrect. Moreover, even if Justice Newman had been writing for the Court's majority, her passing reference to constitutional rights was *dictum*, at best. The purport of her opinion was that "there is no capricious disregard standard of review of agency decisions." *Id.* In that context, Justice Newman commented that "[i]t is only in performing a substantial evidence analysis that the appellate court, *inter alia*, looks to see that . . . constitutional rights were protected . . . ." *Id.* Nothing in Justice Newman's concurring opinion relates to review of a contempt finding.

contempt petition moot on the basis of its decision in another case.[6]  In addition, the League states that the trial court's decisions in other cases challenging the 2019 Ordinances address only whether the 2019 Ordinances were unlawful, not whether the City violated the Settlement Agreement by enacting them; accordingly, the League insists its claim is not moot and its contempt petition should be decided, including its related request for "further declaratory and injunctive relief, sanctions, attorney fees and costs" for requiring compliance with the Settlement Agreement and the trial court's related order.  League Reply Br. at 2.

In response, the City argues that the Settlement Agreement's provision stating that the parties agreed to abide by and adhere to Pennsylvania law is too vague to support a contempt petition.  The League disputes that contention as a matter of Pennsylvania law and also asserts that the City is estopped from challenging the enforceability of the Settlement Agreement.

### III. Discussion

### A. Mootness

The doctrine of mootness stems from the requirement that an actual case or controversy must exist at all stages of review, not merely when an action is

---

[6] In response to the City's assertion of mootness, the League claims the trial court stated in chambers that it would not hold the contempt petition moot based on its decision in other cases. League Br. at 17 n.15.  The League expressly acknowledges that this alleged statement by the trial court is not part of the record before this Court.  *Id.*  As it is not in the record, we cannot consider it.  *See* Pa.R.A.P. 1921 (stating, "[t]he original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases"); Pa.R.A.P. 1921, *Note* (stating that an appellate court may consider only facts in the record on appeal); *Tennyson v. Zoning Hearing Bd. of W. Bradford Twp.*, 952 A.2d 739 (Pa. Cmwlth. 2008) (stating that assertions outside the record may not be considered on appeal).

6

commenced. *Commonwealth v. Packer Twp.*, 60 A.3d 189, 192 (Pa. Cmwlth. 2012) (quoting *Pap's A.M. v. City of Erie*, 812 A.2d 591, 600 (Pa. 2002)). Mootness arises when changes in the facts or law after commencement of an action "deprive the litigant of the necessary stake in the outcome." *Packer Twp.*, 60 A.3d at 192 (quoting *In re Gross*, 382 A.2d 116, 119 (Pa. 1978)) (additional quotation marks omitted).

Here, the trial court's opinion does not identify the action or actions in which the trial court purportedly found the 2019 Ordinances were preempted, nor does it indicate the current status of any appeals that may be pending from any such decisions. Accordingly, this Court lacks sufficient information to consider the mootness issue.

### B. Enforcement of the Settlement Agreement through Contempt Finding
### 1. "Obey the Law" Provisions

Regardless of our inability to evaluate the trial court's reasoning concerning mootness, we nonetheless affirm the trial court's order on the alternative basis[7] that the provision of the Settlement Agreement requiring the parties to abide by and adhere to Pennsylvania law cannot, as a matter of law, form the basis for a finding of contempt. The City argues that the Settlement Agreement provision requiring the parties to "to abide by and adhere to Pennsylvania law," Trial Ct. Dec., slip op. at 2, is merely an "obey the law" provision, which state and federal courts, including the United States Supreme Court, have uniformly declared are not subject to a finding of contempt. City Br. at 21-31. Notwithstanding the League's attack

---

[7] "This Court may affirm on other grounds where grounds for affirmance exist." *Bonifate v. Ringgold Sch. Dist.*, 961 A.2d 246, 253 n.2 (Pa. Cmwlth. 2008) (citing *Belitskus v. Hamlin Twp.*, 764 A.2d 669 (Pa. Cmwlth. 2000)).

on the City's position as "another mind boggling wonder of the world," League

Reply Br.[8] at 13, we find the City's argument persuasive.

> As the Superior Court has explained:
>
> In Pennsylvania, there are four elements for a finding of civil contempt when an individual fails to obey a court order[:]
>
> 1. *The [o]rder is definite, clear and specific*;
>
> 2. The contemnor had notice of the [o]rder;
>
> 3. The contemnor's action was willful; and
>
> 4. The contemnor committed the action with a wrongful intent.

*K.M.G. v. H.M.W.*, 171 A.3d 839, 846 (Pa. Super. 2017) (emphasis added). This

Court has expounded:

> [A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.
>
> To be punished for contempt, a party must not only have violated a court order, but that order must have been "*definite, clear, and specific* – leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct."
>
> . . . *A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced*.

---

[8] The League's principal brief focuses on why the League believes the City violated Pennsylvania law by enacting the 2019 Ordinances. The League's reply brief responds to the City's arguments against enforcement of the Settlement Agreement through a contempt petition.

*Bielby v. Zoning Bd. of Adjustment* (Pa. Cmwlth., No. 1441 C.D. 2019, filed April 9, 2021),[9] slip op. at 12 (quoting *In re Contempt of Cullen*, 849 A.2d 1207, 1210-11 (Pa. Super. 2004)) (emphasis added).

Here, the City contends the Settlement Agreement's provision stating that "[t]he parties agree to abide by and adhere to Pennsylvania law," Trial Ct. Dec., slip op. at 2, is too vague to support a finding of contempt. We agree.

Neither party cites any Pennsylvania state court decision directly on point, and this Court is aware of none. However, as the City correctly points out, numerous federal courts, as well as state courts in other jurisdictions that have considered this issue, have concluded that "obey the law" provisions in court orders are too vague to support a finding of contempt.

This principle is a venerable one. Early in the twentieth century, Supreme Court Justice Oliver Wendell Holmes observed that courts "are bound by the first principles of justice not to sanction a decree so vague as to put the whole conduct of the defendants' business at the peril of a summons for contempt. *We cannot issue a general injunction against all possible breaches of the law*." *Swift & Co. v. U.S.*, 196 U.S. 375, 396 (1905) (Holmes, J.) (emphasis added). Federal courts have routinely adhered to this rule. *See, e.g.*, *Louis W. Epstein Fam. P'ship v. KMart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994) (stating that "[b]road, non-specific language that merely enjoins a party to obey the law or comply with an agreement . . . does not give the restrained party fair notice of what conduct will risk contempt . . . . One party should not be allowed to hold the club of contempt forever over the other's head.") (quoting *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d

---

[9] This opinion is cited as persuasive pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

9

665, 669 (8th Cir. 1987)) (additional quotation marks omitted); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 650 (3d Cir. 2003) (striking language from an order that did "nothing more than order the Commonwealth to obey the law") (citing *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 83 (3d Cir. 1990) (stating that "[o]verbroad language in an injunction that essentially orders a party to obey the law in the future may be struck from the order")); *Sec. Exch. Comm'n v. Warren*, 583 F.2d 115, 121 (3d Cir. 1978) (affirming dissolution of injunction that "merely required defendants 'to obey the law' in the future . . . a requirement with which they must comply regardless of the injunction"); *Sixth Angel Shepherd Rescue, Inc. v. West*, 477 F. App'x 903, 909 (3d Cir. 2012) (stating that "appellate courts will not countenance injunctions that merely require someone to 'obey the law'") (citation omitted).

Federal courts often invoke this principle in conjunction with Rule 65(d)(1) of the Federal Rules of Civil Procedure, which provides:

> **(d) Contents and Scope of Every Injunction and Restraining Order.**
>
> > **(1)** *Contents.* Every order granting an injunction and every restraining order must:
> >
> > > **(A)** state the reasons why it issued;
> > >
> > > **(B)** *state its terms specifically*; and
> > >
> > > **(C)** *describe in reasonable detail* – and not by referring to the complaint or other document – *the act or acts restrained or required.*

Fed. R. Civ. P. 65(d)(1) (emphasis added); *see Pub. Int. Rsch. Grp.*, 913 F.2d at 83 (citing and applying Fed. R. Civ. P. 65(d)(1)). The City argues that in requiring the terms of an injunction to be specific and described in reasonable detail, Rule 65(d)(1)

10

is analogous to the specificity requirement to support a contempt finding under Pennsylvania law. We agree with the City that federal precedents are analogous and persuasive in that regard.

We reject the League's attempt to distinguish the federal decisions as relating only to court orders rather than contracts. First, the Settlement Agreement here was confirmed in a court order. Indeed, if this case were merely about enforcing a contract as the League suggests, there would be no basis for seeking a contempt order in the first instance.[10] It is a violation of the court's *order* confirming an agreement, *not* a violation of the agreement itself, that may give rise to a finding of contempt. Moreover, as set forth above, in *Louis W. Epstein*, a federal appeals court expressly observed that "[b]road, non-specific language that merely enjoins a party to obey the law *or comply with an agreement* . . . does not give the restrained party fair notice of what conduct will risk contempt . . . ." 13 F.3d at 771 (emphasis added). Accordingly, we conclude that, for purposes of the specificity required to support a finding of contempt, it does not matter whether the court's order is based on an agreement by the parties.

For these reasons, we conclude that a contempt order cannot be based on an order that merely requires a party to obey the law. Therefore, the provision of

---

[10] The League avers that the Settlement Agreement was submitted to the trial court for an order "at the request of the [p]arties so that it would be enforceable for purposes of future contempt." League Reply Br. at 20. The Settlement Agreement, as set forth in the Stipulation and the trial court's order, contained no such statement of purpose. *See supra* at 3-4. Moreover, the League cites to nothing in the record supporting its averment of the parties' alleged purpose in having the Settlement Agreement approved by the trial court. Apparently recognizing the absence of record citations or support for its statement, the League adds a footnote positing that "[i]f there was no intent by the [p]arties for the [Settlement] Agreement and [trial c]ourt [o]rder to be enforceable, the [p]arties would have merely submitted a Praecipe to Settle/Discontinue the underlying litigation." League Reply Br. at 20 n.22. This speculative averment is equally unsupported by the trial court's order or any record citation.

the Settlement Agreement in which the parties simply agree to abide by and adhere to Pennsylvania law cannot form the basis for a finding of contempt.

## 2. Laches, Public Reliance, and Estoppel

The League argues that, even assuming the City's argument has merit, the doctrines of laches, public reliance, and "contractual/equitable" and judicial estoppel preclude the City from challenging the enforceability of the Settlement Agreement after 24 years.[11]  League Reply Br. at 17.  These contentions are without merit.  First, the City is not asserting a challenge to the Settlement Agreement's enforceability generally; rather, it is challenging the League's ability to enforce the Settlement Agreement *through a contempt petition*.  Moreover, to the extent that enforceability is at issue in relation to a contempt proceeding, laches, public reliance, and estoppel are inapplicable here.

Laches is an equitable *defense*; as such, it relates only to a prejudicial delay *by the moving party*.  *See Stilp v. Hafer*, 718 A.2d 290, 292 (Pa. 1998)

---

[11] At oral argument, counsel for the League also suggested the City had waived its vagueness/unenforceability argument by raising it for the first time in this appeal.  However, the League did not address this purported waiver in its briefs before this Court.  The only mention of waiver appears in the League's reply brief, in the context of its assertion of laches, public reliance, and estoppel; and that asserted waiver relates solely to the City's failure to raise its own challenge to enforceability during the 24 years between the trial court's confirmation of the stipulated Settlement Agreement and the League's contempt petition in this action.  *See* League Reply Br. at 13.  We will not consider any issue not developed in the League's briefs.  *See City of Phila. v. Berman*, 863 A.2d 156, 161 n.11 (Pa. Cmwlth. 2004) (finding waiver and refusing to address an issue not developed in the argument portion of the appellant's brief) (first citing *Singer v. Bureau of Prof. and Occupational Affairs, State Bd. of Psychology*, 633 A.2d 246 (Pa. Cmwlth. 1993); and then citing Pa. R.A.P. 2119).

Moreover, counsel's suggestion of waiver is incorrect, inasmuch as the City raised and argued the vagueness and unenforceability of the Settlement Agreement in its initial response to the League's petition for a contempt order in the trial court.  *See* RR at 355a-56a.

(explaining that "[l]aches is an equitable doctrine that bars relief when *a complaining party* is guilty of want of due diligence in *failing to promptly institute an action* to the prejudice of another") (emphasis added) (citing *Sprague v. Casey*, 550 A.2d 184, 187 (Pa. 1988)); *St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Assocs.*, 733 A.2d 677, 681 (Pa. Cmwlth. 1999) (stating that "[l]aches applies when *a defendant* is so prejudiced by the passage of time and inexcusable delay that it would be unjust to allow *the plaintiff to assert a claim*") (emphasis added)); *Weinberg v. Commonwealth*, 501 A.2d 239, 242 (Pa. 1985) (explaining that "laches is an affirmative defense"). Thus, the doctrine of laches does not apply to limit one's ability to assert a *defense* of unenforceability in response to an enforcement action. *Accord Smires v. O'Shell*, 126 A.3d 383, 393 (Pa. Cmwlth. 2015) (stating that "[l]aches is an equitable defense. For [petitioners] to use laches as a sword in a legal action they initiated is confusing at best.").

Alleged public reliance on the trial court's order confirming the Settlement Agreement is likewise not a meritorious basis to preclude the City's defense of unenforceability. The concept of public reliance arises only where a petitioner alleges a *procedural defect in the process of enactment* of a statute or ordinance; long delays in raising such *procedural* challenges, where the challenged legislation is substantively valid, have prompted courts to decline to "revisit statutes that are constitutionally sound in substance and that have been relied upon by the citizens of this Commonwealth." *Sernovitz v. Dershaw*, 127 A.3d 783, 792 (Pa. 2015) (citing *Stilp*, 718 A.2d at 293); *see also Messina v. E. Penn Twp.*, 995 A.2d 517, 533 (Pa. Cmwlth. 2010) (stating that "[a] procedural challenge filed more than two years after the intended effective date of an ordinance must also be accompanied by proof sufficient to overcome presumed public reliance on the ordinance")

13

(citations omitted). This case does not involve any delay in challenging the procedure by which a statute or ordinance was enacted. Thus, any alleged public reliance on the Settlement Agreement is immaterial.[12]

Finally, the League contends that "contractual/equitable and judicial estoppel doctrines" bar the City from challenging the enforceability of the "obey the law" provision in the Settlement Agreement. League Reply Br. at 17. We disagree.

The League does not present a developed argument regarding "contractual/equitable" estoppel; it merely asserts, as a general principle, that a contracting party is estopped from later asserting that the contract is not binding. League Reply Br. at 17. We discern no merit in this bald assertion.

In support of its argument, the League cites two decisions. The first, from the England and Wales Court of Appeals, is not discussed, nor is its purported relevance to Pennsylvania law, or indeed American law, explained. *See* League Reply Br. at 17. The other, *Blofsen v. Cutaiar*, 333 A.2d 841 (Pa. 1975), did not involve a contract or a settlement agreement, but rather, a pension fund's passive acceptance of contributions from an employee whose pension eligibility the fund later denied; the League does not explain why that case is relevant here. Because the League fails to present a developed argument regarding contractual/equitable estoppel, that argument is waived. *See Wirth v. Commonwealth*, 95 A.3d 822, 837

---

[12] Further, we note that although the League represents that the public's alleged reliance on the Settlement Agreement is "undisputed," League Reply Br. at 16, the League cites nothing in the record indicating that the City concedes the public's alleged reliance on that agreement. The League apparently bases its assertion of public reliance on a single case, *Anderson v. City of Pittsburgh* (Pa. Cmwlth., No. 1753 C.D. 2019, filed May 27, 2020). The League avers that the plaintiffs in that case relied on the Settlement Agreement in arguing to the trial court that the City was precluded from enacting the 2019 Ordinances. League Reply Br. at 16 & n.16. The League cites no authority to support its implicit suggestion that citation of the Settlement Agreement in a single separate case constitutes public reliance sufficient to bar the City from defending a contempt petition.

(Pa. 2014) (explaining that failure of a brief to develop an issue in a meaningful fashion capable of review constitutes a waiver; the appellate court will not "formulate [a]ppellant's arguments for him") (first citing Pa.R.A.P. 2119(a); then quoting *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (internal citations omitted)).

The doctrine of judicial estoppel is designed to protect the dignity of the courts; it is invoked to prevent a party from "playing fast and loose with the court" by taking a legal position in a later case that is inconsistent with a legal position the same party asserted successfully in an earlier case. *Dep't of Pub. Welfare v. Workers' Comp. Appeal Bd. (Overton)*, 783 A.2d 358, 360 (Pa. Cmwlth. 2001) (explaining that "[t]he courts have held consistently that under the doctrine of judicial estoppel a party may be prevented from 'playing fast and loose' with the court and abusing the judicial process by changing positions as the moment requires") (first citing *Koschak v. Redevelopment Auth. of Wilkes-Barre*, 758 A.2d 291 (Pa. Cmwlth. 2000); and then citing *Trowbridge v. Scranton Artificial Limb Co.*, 747 A.2d 862 (Pa. 2000)).

Here, the League cites *City of Pittsburgh v. Covey* (Pa. Cmwlth., No. 1299 CD 96, filed Apr. 24, 1997), claiming the City argued in that case that a grant it was seeking did not violate the trial court's order confirming the Settlement Agreement. However, the League does not indicate that the City relied on the "obey the law" provision in the Settlement Agreement to support its argument regarding a grant in *Covey*. Moreover, the League does not assert that the City's alleged argument was successful in *Covey*. More fundamentally, *Covey* was decided without a published or publicly accessible opinion, and the order announcing the decision is prefaced by a Notice stating: "THIS UNREPORTED OPINION OF THE

15

COURT SHALL NOT BE CITED IN ANY BRIEF, ARGUMENT OR OPINION, EXCEPT THAT ANY OPINION FILED IN THE SAME CASE MAY BE CITED AS REPRESENTING THE LAW OF THAT CASE." *Id.* The League is not citing this Court's opinion in *Covey* as the law of *this* case; nor could it rationally do so. Accordingly, the League's citation of *Covey* in relation to an argument purportedly asserted in that case is inappropriate here.

For these reasons, we conclude that the City properly challenged the enforceability of the Settlement Agreement in its defense of the League's petition for contempt.

## IV. Conclusion

Based on the foregoing discussion, the order of the trial court is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge


Judge McCullough and Judge Wallace did not participate in the decision in this case.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County Sportsmen's League,

           Appellant

        v.

City of Pittsburgh

:
:
:
:
:
:
:   No. 1810 C.D. 2019
:

# O R D E R

AND NOW, this 3rd day of March, 2023, the November 19, 2019 order of the Court of Common Pleas of Allegheny County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge